DA 06-0126

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 302

KENNETH M. WOLF and MICHEL B. WOLF,
NELL McLOUTH, ALAN D. WISE and
PATRICIA WOLF, GARY PEIFFER and
NANCY PEIFFER, DONALD J. TOPP
and DONNA J. TOPP,

       Plaintiffs and Appellees,

  v.

JERRY L. OWENS,

       Defendant and Appellant.

APPEAL FROM:   District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV-2003-660C
Honorable Stewart E. Stadler, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Lane K. Bennett, Attorney at Law, Kalispell, Montana

      For Appellees:

          Darrell S. Worm, Ogle & Worm, PLLP, Kalispell, Montana

                       Submitted on Briefs:  April 11, 2007

                           Decided:  November 20, 2007

Filed:

_____
                   Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Appellant Jerry L. Owens (Owens) appeals an order of the Eleventh Judicial District Court determining that Kenneth M. Wolf, Michel B. Wolf, Nell McLouth, Alan D. Wise, Patricia Wolf, Gary Peiffer, Nancy Peiffer, Donald J. Topp and Donna Topp (Appellees) have established a prescriptive easement across a parcel of real property owned by Owens, and further denying Owens a prescriptive easement over real property owned by Appellees. We affirm the District Court.

## FACTUAL AND PROCEEDURAL BACKGROUND

¶2 Appellees are owners of lots within the Hawkes Nest subdivision (Hawkes Nest), located near the Middle Fork of the Flathead River in Essex, Montana. Hawkes Nest is subdivided into 24 lots. Lot 24 is located at the northeast corner of Hawkes Nest, from which point the lots run west-southwest, with lot 1 at the southwest corner of the subdivision. Owens has three parcels which surround Hawkes Nest, the largest of which (South Parcel) measures roughly 5 acres and lies just south of Hawkes Nest, between it and the Middle Fork of the Flathead River. Owens's two other parcels border Hawkes Nest along its northerly and northwesterly borders. Only access to and across the South Parcel is at issue in the current appeal.

¶3 The property comprising Hawkes Nest and the South Parcel originally existed as one contiguous piece of property owned by a single individual. In 1957 that individual platted Hawkes Nest, and left what is now the South Parcel as a remainder. The original owner then sold lots within Hawkes Nest to various parties, and abandoned the South Parcel, ultimately forfeiting it for failure to pay taxes. Appellees all acquired their

2

respective Hawkes Nest lots between 1969 and 1994. Owens obtained the South Parcel via assignment of a tax sale certificate in 1970. Owens finally acquired a tax deed to this parcel in 1988.

¶4 Beginning in the summer of 1971, Owens began visiting the South Parcel a couple of times a year. Owens claims he reached the South Parcel over a road which cut across Hawkes Nest, beginning in the northeast area of this subdivision around lot 16 and running southwest to lot 3. Owens claims that on more than one occasion he was able to drive a vehicle down this road, across lots 4 and 5, directly onto the South Parcel. At other times, he would drive to lot 5, park his vehicle there, and then walk to the South Parcel.

¶5 At some point, a chain and a "no vehicle" sign were placed across the road at lot 8, which was owned by Donald J. Topp. Owens contacted Topp by telephone and inquired if he could buy a part of lot 8 to gain access to the South Parcel, but Topp refused this request. After this time, Owens ceased driving down to lots 3, 4, and 5, and parked at other lots, or outside of Hawkes Nest altogether, and simply walked down to the South Parcel.

¶6 Because Owens's visits to the South Parcel were infrequent, contact between Owens and the various Appellees was sporadic at best. Topp claimed that his first contact with Owens was in the late 1980's or early 1990's after receiving the telephone call from Owens. Gary and Nancy Peiffer claim their first contact with Owens occurred in July of 1993. Nell McLouth claims she became aware of Owens sometime in late 1988-89, and also met him in July of 1993. Ken Wolf also first met Owens in July of

3

1993. Al Wise and Patricia Wolf claim their first meeting with Owens occurred in 1995. Prior to either meeting Owens in person or receiving a phone call from him, none of the Appellees knew that Owens owned the South Parcel, or that it was owned by anyone at all.

¶7     Owens claims that during these interactions he gave permission to Appellees to access the Middle Fork via the South Parcel. Appellees, however, deny they ever sought or received such permission. Appellees also claim that during interactions with Owens, he indicated that he might obstruct access to the Middle Fork by constructing a fence along the South Parcel. Owens never constructed any fence. Additionally, Appellees claim that Owens could not have driven past lot 8, in a southwesterly direction onto lots 3, 4, or 5, because, they say, no such road existed. They also dispute that it was even possible for Owens to drive a vehicle directly onto the South Parcel, as there existed a steep bank between their lots and the South Parcel which would have prevented any vehicular access.

¶8     For their part, Appellees claim that they accessed the Middle Fork for recreational purposes by crossing the South Parcel from their lots beginning in 1969. Owens claims that he never saw indications of such use until the late 1980's. Nevertheless, it is undisputed that, for years, Appellees crossed Owens's property to gain access to the Middle Fork, and that they denied him the right to cross their lots in order to reach the South Parcel.

¶9     On December 18, 2003, Appellees filed a suit for declaratory relief and an injunction against Owens. Appellees sought a declaration from the District Court that

4

they had a prescriptive easement across the South Parcel, and further asked the District Court to enjoin Owens from interfering with their rights of access across the South Parcel. Owens responded and counterclaimed, seeking a declaration that he had acquired an implied easement across Appellees' lots in order to gain access to the South Parcel. Owens also sought injunctive relief preventing Appellees from interfering with his rights of access.[1]

¶10 On January 21, 2005, the District Court held a bench trial on this matter, issuing its final order on August 10, 2005. The District Court found that Appellees' use of the South Parcel was open, notorious, exclusive, adverse, continuous, and uninterrupted for more than five years, and thus satisfied all the required elements for a prescriptive easement. Additionally, the District Court rejected Owens's claims that he had established an implied easement by use or necessity across Appellees' lots. The District Court determined that the South Parcel did not appear on the original plat, was not transferred or sold by the sub-divider, and was allowed to be forfeited for back taxes. The District Court further held that no access to the South Parcel from the northerly Owens's parcels and across the lots of Hawkes Nest was contemplated by the original owner. Owens has timely appealed this decision.

## ISSUES

¶11 We consider the following issues on appeal:

---

[1] Other issues relating to Appellees' use of the South Parcel and Owens's northerly parcels were also raised and argued before the District Court, none of which have been appealed.

5

¶12    **Issue One**:  Did the District Court err in concluding that Owens does not have an implied easement across Appellees' real property?

¶13    **Issue Two**:  Did the District Court err in concluding that Appellees have a prescriptive easement across the South Parcel?

## STANDARD OF REVIEW

¶14    "We review a district court's findings of fact to ascertain whether they are clearly erroneous.  A finding is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehended the effect of the evidence, or if our review of the record convinces us that a mistake has been committed.  The standard of review of a district court's conclusions of law is whether the court's interpretation of the law is correct." *Gelderloos v. Duke*, 2004 MT 94, ¶ 22, 321 Mont. 1, ¶ 22, 88 P.3d 814, ¶ 22 (citations omitted).

## DISCUSSION

¶15    **Issue One**: Did the District Court err in concluding that Owens does not have an implied easement across Appellees' real property?

¶16    Implied easements are created "by operation of law at the time of severance, rather than by written instrument. There are only two types of implied easements: (1) an intended easement based on a use that existed when the dominant and servient estates were severed, and (2) an easement by necessity." *Albert G. Hoyem Trust v. Galt*, 1998 MT 300, ¶ 17, 292 Mont. 56, ¶ 17, 968 P.2d 1135, ¶ 17 (citation omitted).  The implied easement by necessity has two basic elements: (1) unity of ownership, and (2) strict necessity at the time that the unified tracts are severed. *Hoyem Trust*, ¶ 18.  "A way of

6

necessity depends solely upon strict necessity at the time of conveyance and is, in that sense, more truly an implied use. The way of necessity arises when the strong public policy against shutting off a tract of land and thus rendering it unusable gives rise to a fictional intent defeating any such restraint." *Hoyem Trust*, ¶ 19 (citations and quotations omitted). In other words, an easement by necessity is found when an owner conveys a "landlocked" parcel of real property which can only be accessed across the real property of the grantor herself, or the surrounding land of third parties. *Hoyem Trust*, ¶ 18.

¶17 The second type of implied easement, one from a pre-existing use, "arises only if, prior to the time the title or tract is divided, a use exists on the 'servient part' that is reasonably necessary for the enjoyment of the 'dominant part,' and a court determines that the parties intended the use to continue after division of the property." *Hoyem Trust*, ¶ 22. Moreover, "[f]or a use to give rise to an implied easement from existing use, it must be apparent and continuous at the time the tract is divided." *Hoyem Trust*, ¶ 23.

¶18 Owens argues that he established an implied easement by necessity and that the District Court erred in rejecting his claim. Owens points out that the South Parcel can only be accessed by crossing Hawkes Nest; thus, an easement over Hawkes Nest is necessary for Owens to use and enjoy his property. Additionally, he maintains that because one individual initially owned the land now comprising Hawkes Nest and the South Parcel, both elements for an implied easement by strict necessity are satisfied in this case.

¶19 The District Court did not err in rejecting this claim. Simply put, Owens has failed to demonstrate there was strict necessity at the time when Hawkes Nest and the

7

South Parcel were severed. In fact, because the original owner abandoned the South Parcel entirely, it is abundantly clear there was no intention to grant it to anyone at all. The fact that Owens claims strict necessity now does not mean that strict necessity existed at the time the unified tracts were severed. See ¶ 16. Owens has failed to establish an implied easement by necessity in this case.

¶20 Owens also argues he established the existence of an implied easement by pre-existing use. Owens asserts that pre-existing use of the South Parcel is established by virtue of the existence on his parcel of a structural foundation, which was apparently washed away during a 1964 flood. Owens claims that the existence of this structure shows that there had been access to the South Parcel across Hawkes Nest at a previous time. As further support of this view, Owens claims there is evidence of a road leading to this structure which crosses Hawkes Nest across lot 8.

¶21 The District Court correctly rejected this claim as well. To establish an implied easement by pre-existing use in this case, it is not enough to show that someone accessed the South Parcel at some previous time. Instead, Owens must show that the use existed at the time of severance and that there was an intent that the use continue. *Hoyem Trust*, ¶ 22. Owens's claims and the evidence he presents are not sufficient to meet this burden. Prior to a survey conducted in 2002, many residents of Hawkes Nest mistakenly thought their lots extended all the way to the Middle Fork. A plausible explanation for the structure is that a former owner of lot 8 constructed a cabin on what is now the South Parcel in the mistaken belief that he owned the land. At any rate, Owens cannot prove that the structure existed at the time of the severance of the South Parcel and Hawkes

8

Nest in 1957, and that there was an intent to provide access across Hawkes Nest to reach that structure, so his argument fails.

¶22 Accordingly, the District Court did not err in finding Owens failed to establish an implied easement by necessity or existing use to the South Parcel.

¶23 **Issue Two**: Did the District Court err in concluding that Appellees have a prescriptive easement across the South Parcel?

¶24 "In order to establish an easement by prescription, the party claiming the easement must show open, notorious, exclusive, adverse, continuous and uninterrupted use of the easement claimed for the full statutory period." *Leffingwell Ranch, Inc. v. Cieri*, 276 Mont. 421, 426, 916 P.2d 751, 754 (Mont. 1996) (quotation omitted). The statutory period is five years. Section 70-19-404, MCA.

¶25 Owens claims that Appellees failed to satisfy all these elements before the District Court. On the one hand, Owens argues the use was not hostile or adverse because Appellees generally thought that no one owned the South Parcel, and because Owens granted Appellees permission to cross the South Parcel. Owens also contends that the use of the South Parcel was sporadic, infrequent, and therefore did not meet the continuous use requirement. Additionally, Owens asserts that use of the South Parcel was not open and notorious insofar as there was no obvious evidence that Appellees were crossing the South Parcel.

¶26 Appellees assert the District Court did not err in rejecting Owens's arguments. Appellees argue that the evidence in the record supports the conclusion that the use was open, notorious and sufficiently adverse and hostile, based on the fact that Owens

9

threatened to fence off the South Parcel in various conversations he had with Appellees throughout the 1990's. Appellees note that Owens's threats would make sense only if he had actually seen their use and felt it threatened his property rights. With respect to whether Owens gave Appellees permission to cross the South Parcel, Appellees note that the District Court heard conflicting testimony on this issue, and ultimately found Appellees' testimony more credible. Appellees argue we should not second-guess the District Court in this regard. Further, Appellees note that use does not have to be constant for the continuous use requirement to be satisfied, and that so long as the use is made often enough to put the property owner on notice that the use is occurring, this element is satisfied.

¶27 We agree with Appellees that the District Court did not err in determining they had acquired a prescriptive easement across the South Parcel. It is undisputed that at various times during the 1990's, Owens threatened to fence off the South Parcel and prevent Appellees from accessing the Middle Fork across his property. This shows that he was aware of this usage, and that it was hostile to his property interest. As for whether he granted Appellees permission to cross the South Parcel, we defer to the District Court's determination on this issue. The record shows that Owens and Appellees had a different view of some of these interactions and what was said. The District Court heard and considered the testimony, and concluded that Appellees' versions of events were more credible. "It is for the trier of fact, and not this Court, to assess the credibility of witnesses and weigh the evidence; we will not second-guess a district court's

10

determinations regarding the strength and weight of conflicting testimony." *Point Serv. Corp. v. Myers*, 2005 MT 322, ¶ 28, 329 Mont. 502, ¶ 28, 125 P.3d 1107, ¶ 28.

¶28    Additionally, Appellees correctly note that "[c]ontinuous use . . . does not mean constant use.  Rather, if the claimant used the right-of-way whenever he desired, without interference by the owner of the servient estate, the use was continuous and uninterrupted." *Cook v. Hartman*, 2003 MT 251, ¶ 29, 317 Mont. 343, ¶ 29, 77 P.3d 231, ¶ 29 (quotation omitted).  In other words, Appellees' use does not need to be constant to in order to satisfy the continuous use requirement.  Here, it is undisputed that the Appellees' use of the South Parcel, although not constant, more than meets the statutory requirement of 5 years.  In some cases, the use of the South Parcel began in 1969 or the early 1970's.  Therefore, the continuous use element is satisfied.

¶29    The District Court correctly concluded that Appellees have established a prescriptive easement across the South Parcel.

## CONCLUSION

¶1    We affirm the District Court's decision granting declaratory and injunctive relief to Appellees and denying Owens' claim for a declaration that he has established an implied easement by necessity or pre-existing use across Appellees' real property.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ JIM RICE

11