DA 07-0602

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 451

GARY L. WATERS and PATRICIA WATERS,

Plaintiffs and Appellants,

v.

CAMERON A. BLAGG, JERRY PAUL OVERMAN,
DELBERT E. BOWE and LINDA M. BOWE, and all
other persons, unknown, claiming or who might claim
any right, title, estate, or interest in or lien or encumbrance
upon the real property described in the Complaint adverse
to Plaintiffs, ownership or any cloud upon Plaintiffs' title
thereto, whether such claim or possible claim be present or contingent,

Defendants and Appellees.

APPEAL FROM:     District Court of the Twentieth Judicial District,
                 In and For the County of Sanders, Cause No. DV-06-08
                 Honorable C.B. McNeil, Presiding Judge

COUNSEL OF RECORD:

         For Appellants:

                 Randall A. Snyder; Snyder Law Officer; Bigfork, Montana

         For Appellees:

                 Darrell S. Worm; Ogle and Worm; Kalispell, Montana

                                 Submitted on Briefs:  August 13, 2008

                                            Decided:  December 30, 2008

Filed:

         _____
                              Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Gary and Patricia Waters ("the Waters") commenced an action in Sanders County District Court to quiet title to their property, seeking declaration that the property was unencumbered by any easements in favor of neighbors Blagg, Bowe, and Overman, (collectively "the Defendants"); and that Blagg's rock harvesting operation on the adjoining property was a nuisance. The Defendants counterclaim that they acquired easement by implication or by prescription. The District Court granted summary judgment in the Defendants' favor, declaring a blanket implied easement by pre-existing use and by necessity, and a prescriptive easement as to all Defendants on existing roads crossing the Waters' property. The District Court subsequently held a bench trial to resolve those issues not subject to summary judgment, and determined that the Defendants' use of the easement was within the permissible scope, and that Blagg's rock harvesting operation did not constitute a nuisance. The Waters appeal from both the summary judgment and final judgment. We affirm in part, reverse in part, and remand to the District Court for proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 The parties own property in Section 17 of rural Sanders County, Montana. Access to the properties commences from Montana Highway 56, continuing across approximately one mile of United States Forest Service ("USFS") property where it enters Section 17 at the eastern boundary of Waters' Parcel E. Before the main road continues into Waters' Parcel C-2, a southerly spur provides access to the Bowe property, Parcel J. The main road continues into Parcel C-2, where it again divides into an "upper"

2

and "lower" road. The upper road cuts diagonally across Parcel C-2, providing access to the Blagg (Parcels C, C-1, G, and H) and Overman (Parcels K, A) properties and the lower road continues along the boundary line between Parcel C-2 and Parcel E, providing access both to Blagg's properties and for landowners not party to this action. Waters' residence is located on Parcel C-2. The roads described provide the only practical access to all properties in Section 17. The parties' use of the USFS road is permissive. A diagram of the subject properties is appended to this Opinion for reference.

¶3　As of 1963, WH Field and Company, Inc. ("Field Co.") owned the east half of Section 17, including the parties' property, in one unified tract. Field Co. conveyed each of the parcels at issue between 1964 and 1976, but failed to effectively reserve or grant easements for the benefit of any of the properties it conveyed. All parties to this action therefore hold title to property lacking legal access.[1] The Waters purchased first Parcel C-2, and then Parcel E, with the knowledge that there was no legal access across the USFS property to any of the properties in Section 17, including their own.

¶4　The access road in question is a dirt road typical of old logging roads found in Western Montana. In places, it is not wide enough for two cars to pass. The use of the road has been similarly typical. At the time Field Co. purchased its interest in Section 17, the network of roads on the property had been utilized exclusively for logging purposes.

---

[1] The record on appeal indicates the parties' agreement that Blagg reserved an easement over Waters' Parcel C-2 for the benefit of the remainder of his property in Parcel C. However, neither the parties nor the District Court considered the effect of such an easement in their respective analyses of the issues in this case, and the deed from Blagg to Waters which purportedly contains the easement language was not made a part of the record on appeal. Our analysis of the respective rights of the parties to this case does not therefore take into account the existence of the purported reserved easement for the benefit of Blagg's property across the Waters' Parcel C-2.

Each of the parcels at issue continued to be logged to some extent after they were severed from common ownership under Field Co.

¶5     In 1996, Blagg began small scale rock harvesting and sale from his property. The scale of his operation and corresponding use of the road has increased significantly since that time, peaking in 2006. There is now approximately one loaded truck per day traveling the road, and Blagg's employees use the road to get to work. Overman sold a substantial quantity of rock to a third party in 1996 or 1997, and has not sold or harvested rock since then, although he plans to do so in future. In 2004, Blagg began harvesting rock from the Bowe property, requiring travel between those properties over both the Waters' parcels. Prior to the Waters' construction of their residence from 1997-2000, residential use of the road was sporadic and limited. Since that time, use of the road has become increasingly residential. The Waters do not object to use of the road for residential purposes.

¶6     Blagg's rock harvesting and hauling operations are typical, with the attendant dust, noise, and travel one would expect of such an operation. Blagg acknowledged that his operation was negatively affecting the Waters, and has made attempts to address the Waters' concerns regarding both the harvesting operation and the associated travel on the road in question. Despite these attempts, the Waters maintain that the operation continues to inhibit the quiet peace and enjoyment of their property, constituting a nuisance.

¶7     The District Court granted summary judgment in favor of the Waters with respect to their claim that none of the named Defendants have a granted or recorded easement to

4

cross the Waters' property. The court denied the Waters' motion as to their claim that the Defendants lack implied or prescriptive easements, instead granting summary judgment in favor of the Defendants on those issues. The District Court then held a bench trial to determine the scope of use of the declared easements, and to evaluate the merits of the Waters' nuisance claim. From that trial, the court determined that Blagg has an express easement over the Waters' property, and that each of the Defendants have easements by necessity, by pre-existing use, and by prescription across the Waters' property. The court further concluded that the use of the roads associated with the commercial transport of rock was within the permissible scope of the declared easements, and that Blagg's rock hauling and quarrying operations did not constitute a private nuisance. The Waters appeal four aspects of the District Court's judgment.[2] First, that the Defendants are

_____

[2] In briefing to this Court, the Waters do not appeal the District Court's apparent determination that Blagg has an express easement over the Waters' property. However, because declaration of the parties' respective easement rights is critical to determining the scope of use those easement rights will support, we are compelled to correct the District Court's erroneous conclusion that Blagg has an express easement to cross the Waters' property. In reaching this conclusion, the court apparently relied upon the following language in the 1969 deed transferring Parcel C from Field Co. to Hoge: "A permanent road easement is granted to Purchaser of above described property . . . ." The language in question appears in a deed that is within the chain of title of the dominant estate, here Parcel C. There is no evidence of record indicating that language purporting to burden the servient estate, here Parcel E, appears within the corresponding chain of title.

We have held that "[i]t is not enough for an encumbrance to be recorded in the chain of title of an easement's dominant estate. In order for the landowner of the servient estate to be bound, the encumbrance must also be found in the servient estate's chain of title. In determining the ultimate effect of an easement or restriction on the land of another, the general rule is that '[i]n the absence of actual notice before or at the time of . . . purchase or of other exceptional circumstances, an owner of land is only bound by restrictions if they appear in some deed of record in the conveyance to [that owner] or [that owner's] direct predecessors in title.'" *Nelson v. Barlow,* 2008 MT 68, ¶ 16, 342 Mont. 93, ¶ 16, 179 P.3d 529, ¶ 16 (internal citations omitted). Since there is nothing in the record before us indicating an express easement over the Waters' property, we proceed on the assumption that none of the party Defendants, including Blagg, have a granted or recorded easement to cross that property.

5

entitled to an implied easement by pre-existing use or necessity. Second, that the Defendants are entitled to an easement by prescription. Third, that the scope of the Defendants' easement rights allow the uses associated with the commercial harvest of rock. Finally, that Blagg's operations do not constitute a private nuisance.

## STANDARD OF REVIEW

¶8 We review a district court's grant of summary judgment de novo. *Bowyer v. Loftus*, 2008 MT 332, ¶ 6, 346 Mont. 182, ¶ 6, 194 P.3d 92, ¶ 6. Legal conclusions and mixed questions of law and fact are also reviewed de novo. *Stanley v. Lemire*, 2006 MT 304, ¶ 25, 334 Mont. 489, ¶ 25, 148 P.3d 643, ¶ 25.

¶9 We resolve the following dispositive issues on appeal:

¶10 I. Did the District Court err in concluding that the Defendants were entitled to declaration of an implied easement by pre-existing use?

¶11 II. Did the District Court err in concluding that the scope of the Defendants' easement permitted uses associated with the commercial harvesting of rock?

¶12 III. Did the District Court err in determining that Blagg's rock harvesting operation did not constitute a nuisance?

## DISCUSSION

¶13 **I. Did the District Court err in concluding that the Defendants were entitled to declaration of an implied easement by pre-existing use?**

¶14 An implied easement is created by operation of law at the time a contiguous tract of land is severed from common ownership. *Wolf v. Owens*, 2007 MT 302, ¶ 16, 340 Mont. 74, ¶ 16, 172 P.3d 124, ¶ 16. If, prior to the time of severance from common ownership, "a use exists on the 'servient part' that is reasonably necessary for the enjoyment of the 'dominant part,' and a court determines that the parties intended the use

6

to continue after division of the property," then an implied easement by pre-existing use is created. *Wolf*, ¶ 17, citing *Albert G. Hoyem Trust v. Galt*, 1998 MT 300, ¶ 22, 292 Mont. 56, ¶ 22, 968 P.2d 1135, ¶ 22. For the use at issue to give rise to an easement by pre-existing use, it must be apparent and continuous at the time the tract is divided. *Wolf*, ¶ 17. Put another way, three elements must be satisfied: 1) the tracts at issue must have been severed from common ownership; 2) the use that exists on the servient tract must be apparent, continuous, and reasonably necessary for the beneficial use and enjoyment of the dominant tract at the time of severance; and 3) the parties to the deed must have intended the use to continue after division of the property.

¶15 The Waters challenge only the second element of this test. Specifically, they argue that because the parties access Section 17 by *permissive* use of a USFS road, the proposed easement by implication will not provide true legal access, thus it cannot be necessary for beneficial use and enjoyment of the Defendants' land. Essentially, they assert that an easement by implication cannot be declared where there is no connection to a public road. The Defendants argue that for the purposes of our analysis, the USFS road is a "public road," and that moreover, connection to a public road is not required where, as here, there is a pre-existing use of the proposed implied easement.

¶16 The Waters cite several cases for the proposition that an implied easement by pre-existing use cannot exist where there is no direct connection to a public road: *Schmid v. McDowell*, 199 Mont. 233, 649 P.2d 431 (1982); *Graham v. Mack*, 216 Mont. 165, 699 P.2d 590 (1984); and *Rathbun v. Robson*, 203 Mont. 319, 661 P.2d 850 (1983). However, the cases cited by Waters recite this requirement only in situations where an

7

implied easement by *necessity* is being claimed. There is no such requirement where an implied easement by *pre-existing use* is claimed. The Waters' argument fails to give effect to the critical distinction between the two types of implied easements: unlike an easement by necessity, an easement by pre-existing use depends upon a route already in existence.

¶17 The rationale behind this distinction is more practical then academic. Where a party seeks recognition of an implied easement by pre-existing use, the road in question is already being used for access to the outside world. Conversely, when an easement by necessity is being claimed where there is no connection to a public roadway, "the basic reason for the creation of a way of necessity, namely, to permit communication with the outside world, is not present." *Schmid v. McDowell*, 199 Mont. 233, 238, 649 P.2d 431, 433 (1982) (internal citations omitted). Such an easement would represent the proverbial "road to nowhere." In each of the cases the Waters cite, the proposed easement did not physically exist at the time the properties were severed from common ownership. This critical fact is not present in the instant case.

¶18 We conclude that a connection to a public road is not required where a landowner seeks declaration of an implied easement by pre-existing use. The Waters' argument that the rationale behind requiring a connection to a public road is present in the instant case is not persuasive. The pre-existing road that all parties have used to access their property in Section 17 is in fact a road to somewhere—namely, to a USFS road that in turn leads to the public highway. The Waters' assertion that the road crossing their property merely represents access to federal land as opposed to access to the outside world is somewhat

8

disingenuous in light of the Waters' dependence upon the USFS road for access to their own property. The District Court correctly concluded that the Defendants were entitled to declaration of an implied easement by pre-existing use across the Waters' land. This conclusion renders moot a determination of whether the Defendants were entitled to declaration of an implied easement by necessity or of a prescriptive easement. We therefore turn to the issue of the scope of the Defendants' easement rights.

¶19 **II. Did the District Court err in concluding that the scope of the Defendants' easement permits uses associated with the commercial harvesting of rock?**

¶20 The scope of an implied easement is controlled by the apparent intent of the landowner who effected a severance of the dominant and servient estates. *See e.g. Tungsten Holdings, Inc. v. Kimberlin*, 2000 MT 24, ¶ 27, 298 Mont. 176, ¶ 27, 994 P.2d 1114, ¶ 27, *overruled on unrelated grounds*, *Shammel v. Canyon Resources Corp.*, 2003 MT 372, 319 Mont. 132, 82 P.3d 912. An easement by implication arises by operation of law at the time the dominant and servient estates are severed from common ownership. *Wolf*, ¶ 16.

¶21 Here, the Defendants' implied easement by pre-existing use to cross the Waters' Parcel C was created by operation of law in 1969, when Field Co. severed Parcel C from its common ownership of the remainder of its holdings in Section 17. The easement over Parcel E was created in like manner in 1972. Therefore, our inquiry regarding the scope of the Defendants' easement focuses on Field Co.'s intent with respect to the use of the roads in Section 17 in 1969 and 1972 respectively. The District Court found that at the time the Defendants' easement by implication arose, the roads in Section 17 were being

9

used in a manner associated with commercial logging operations; and that the Defendants' use of the road for commercial rock harvesting operations fell within the permissible scope of the easement.

¶22 We discern the intent of the original owner with respect to the scope of an implied easement by considering "not only the actual uses being made at the time of the severance [from common ownership], but also to such uses as the facts and circumstances show were within the reasonable contemplation of the parties at the time of the conveyance." *Tungsten Holdings, Inc.*, ¶ 27. The scope of an easement by implication is not permanently frozen at the time of severance, but rather it is measured "by such uses as the parties might reasonably have expected from future uses of the dominant tenement." *Tungsten Holdings, Inc.*, ¶ 27, 33, citing *Restatement of Property* § 484, cmt. b (1944). We assume that the person who severs two parcels from common ownership creating an easement by implication "anticipated such uses as might reasonably be required by a normal development of the dominant tenement." *Tungsten Holdings, Inc.*, ¶ 33.

¶23 The Waters first urge this Court to overrule our holding in *Tungsten Holdings, Inc.* as inconsistent with the scope of use rules for recorded and prescriptive easements. They argue that litigants will be motivated to assert implied easement claims over any other form of easement since the scope of an implied easement is potentially far more expansive than the scope of an express or prescriptive easement. This argument inexplicably presumes that any party with an easement dispute will, at their convenience, be able to establish the elements of an easement by implication, thereby forcing the court

10

to automatically award them expansive easement rights. Moreover, the Waters' argument ignores that the scope of an implied easement is dictated by proof of the intent of the property owner at the time of the severance. The Waters' suggestion that any party asserting an implied easement will be granted expansive easement rights as a matter of course is not well taken. The extent of an easement by implication is limited to the uses existing at the time of the severance, and other uses the circumstances show the parties might reasonably have expected from future uses of the dominant estate. *Tungsten Holdings, Inc.*, ¶¶ 27, 33. Allowing for normal development of an easement simply permits a court to accommodate the inevitable changes in use that occur on rural properties.

¶24 In the instant case, the parties agree that at the time of severance, the road in question had been used in a manner associated with commercial logging operations. It is apparent from the District Court's findings and conclusions that it determined Field Co. might reasonably have expected that the road would eventually be used in a manner associated with a small scale commercial rock harvesting operation. We agree. At the time of severance, the entirety of Field Co.'s property in Section 17 had been utilized almost exclusively for the purpose of exploiting its natural resources, and in all probability, Field Co. contemplated that such natural resource development would continue. Importantly, the record reflects that the network of roads in Section 17 was created in order to facilitate commercial logging operations, and that the road in question was used almost exclusively for that purpose until very recently, when residential development occurred. Finally, the burden imposed on the road by the Defendants' rock

11

harvesting operation is less onerous than that of the logging operations that preceded it. For example, the weight of a given load of rock is approximately 16,000 pounds, versus 80,000 pounds for a load of logs.

¶25    In sum, the evidence supports the conclusion that Field Co. "might reasonably have expected" the commercial hauling of another natural resource—decorative rock—over the easement in question. *Tungsten Holdings, Inc.*, ¶ 27.  Ultimately, the Waters' objection is to the perceived incompatibility of residential use of the road and those uses associated with resource extraction.  However, the only evidence of record indicates that at the time of severance, Field Co. reasonably expected continued resource extraction, not residential use, of the roads in question.  That the character of Section 17 has become increasingly residential in recent years is of no consequence to our analysis.  We therefore conclude that the scope of the Defendants' implied easement by pre-existing use permits the uses associated with the commercial harvesting of rock.

¶26    **III.  Did the District Court err in determining that the Defendants' rock harvesting operation did not constitute a nuisance?**

¶27    The Waters assert that the District Court received undisputed evidence that Blagg's rock harvesting operation and associated rock hauling constituted a nuisance, yet concluded without supportive findings that Blagg's activity was not a nuisance.  They ask this Court to reverse the District Court with instructions to find and enjoin Blagg's operations as a nuisance.  The Defendants acknowledge the District Court's lack of findings with respect to its conclusion that Blagg's operations did not constitute a

12

nuisance, but urge this Court to apply the doctrine of implied findings and uphold the District Court's judgment.

¶28 The doctrine of implied findings provides that where "findings are general in terms, any findings not specifically made, but necessary to the [determination] are deemed to have been implied, if supported by the evidence." *Caplis v. Caplis*, 2004 MT 145, ¶ 32, 321 Mont. 450, ¶ 32, 91 P.3d 1282, ¶ 32 (internal citations omitted). The doctrine of implied findings is inapplicable to the instant case. Where, as here, there is a glaring absence of any findings, general or otherwise, to support a given conclusion of law, we must reverse. We therefore remand to the District Court for additional findings specific to the question of whether Blagg's rock harvesting operation and associated hauling do or do not constitute a nuisance.

¶29 We affirm in part, reverse in part, and remand to the District Court for proceedings consistent with this Opinion.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS

13

**APPENDIX**

The following diagram is reproduced from the record, with extraneous information removed.

