FILED

April 7 2010

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 09-0299

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2010 MT 71

JONATHAN FRAME,

      Plaintiff and Appellee,

    v.

THEODORE D. HUBER, CARLEEN M. HUBER,
CHARLES ANDREW POOLE, VALERIE ALEISA SMITH,
GREGORY L. YETTER, CATHERINE M. YETTER,
LARRY R. RACICOT, MARGARET POOLE RACICOT,
GARY L. MARTINSEN and LORI B. MARTINSEN,

      Defendants and Appellants.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. CDV 08-375(b)
Honorable Julie Macek, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

            Robert J. Phillips, Amy O. Duerk; Phillips Law Firm P.C.,
Missoula, Montana

      For Appellee:

            Patrick E. Melby, Erin F. MacLean; Luxan & Murfitt, PLLP,
Helena, Montana

                    Submitted on Briefs:  October 28, 2009

                              Decided:  April 7, 2010

Filed:

             _____
                         Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1      Hubers, Poole, Smith, Yetters, Racicots and Martinsens appeal from the District Court's April 17, 2009, order granting Frame's motion for summary judgment, ruling that Frame has an easement by necessity across their lands, and denying all other motions for summary judgment.  We reverse.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2      The parties all own tracts of land that abut the Dearborn River.  Frame's lot abuts the River on the south bank and lies in Lewis & Clark County.  The Huber and Poole lots abut each other and are on the opposite side of the Dearborn River from Frame's lot, in Cascade County.[1]  In 1971 Fred and Nina Dear subdivided land they owned, including all of the land that now comprises the lots owned by the parties.  That same year an entity called LDS, Inc. bought the subdivided Dear property and sold the lots to the parties or to their predecessors in interest.  The Poole lot was bought in January, 1971; the Huber lot was bought in August, 1971; and the Frame lot was bought in November, 1971.  Jonathan Frame acquired the Frame lot in 2002.  The State of Montana owned the bed of the Dearborn River, *Montana Coalition for Stream Access v. Curran*, 210 Mont. 38, 682 P.2d 163 (1984), at and before the time the current lots were created and sold.

¶3      A road known as the Dearborn River Road abuts the northern boundary of the Huber and Poole lots and provides access to those lots and other land in the area.  The Dearborn River Road does not reach the Dearborn River (at least in the area at issue in

---

[1] Theodore and Carleen Huber own the parcel referred to as the Huber lot.  Poole, Smith, the Yetters, the Racicots and the Martinsens own the parcel referred to as the Poole lot.

2

this case) or the Frame lot. Another road turns off of the Dearborn River Road, follows on or near the property line between the Huber and Poole lots and reaches the Dearborn River on Hubers' land. At the place where this second road reaches the River it is possible, at least in times of lower water flows, to ford the River with a vehicle and reach Frame's lot. There is no bridge.

¶4 Hubers or Pooles have long maintained a locked gate at the turn-off onto their property from the Dearborn River Road. They have used the gate to control access to their property and to the road leading across their property down to the River. They excluded Frame on one or more occasions when he sought to cross their land to reach the River.

¶5 Frame sued, claiming that he was entitled to an easement by necessity across the Poole/Huber land so that he could reach the Dearborn River and cross it to reach his property. The parties moved for summary judgment. The District Court concluded that Frame had an easement by necessity to cross the Poole/Huber lots from the Dearborn River Road in order to reach the Dearborn River.

¶6 The dispositive issue is whether the District Court erred when it ruled that Frame had an easement by necessity across the Poole/Huber land.

### STANDARD OF REVIEW

¶7 This Court reviews a district court's decisions on motions for summary judgment de novo. *Allstate Ins. Co. v. Wagner-Ellsworth*, 2008 MT 240, ¶ 7, 344 Mont. 445, 188 P.3d 1042.

### DISCUSSION

3

¶8  The District Court found that Frame had an implied easement by necessity to cross the Poole/Huber lots from the Dearborn River Road to reach the Dearborn River, which he would then have to cross to reach his lot.

¶9  Montana law recognizes the existence of easements by necessity as a species of implied easements. Easements by necessity arise from a legal fiction that the owner of a tract of land would not sell parts of the land so as to isolate and landlock a remaining portion of it without having intended to reserve a way of access to the parcel over the lands being severed. *Wolf v. Owens*, 2007 MT 302, ¶ 16, 340 Mont. 74, 172 P.3d 124. The law implies intent by the landowner to provide an easement by necessity in favor of the landlocked parcel across the landowner's other lands when necessary to reach a public road. In easement terms, the landlocked parcel is the dominant estate, and the landowner's other sold property that must be crossed to reach the landlocked parcel is the servient estate. *Albert G. Hoyem Trust v. Galt*, 1998 MT 300, ¶ 18, 292 Mont. 56, 968 P.2d 1135; *Schmid v. McDowell*, 199 Mont 233, 237, 649 P.2d 431, 433 (1982).

¶10  An easement by necessity can arise only within the context of land held in common ownership at the time a severance creates a landlocked parcel, and cannot exist over the land of a third person whose land was not part of the common ownership. *Big Sky Hidden Village Owners Assoc. v. Hidden Village, Inc.*, 276 Mont. 268, 277, 915 P.2d 845, 850 (1996). Easements by necessity arose from a public policy against isolating tracts of land and thereby minimizing their utility, *Big Sky Hidden Village*, 276 Mont. at 277, 915 P.2d at 851, but they may arise only in the specific circumstances that come within the requirements of law. Implied easements by necessity have never been

4

intended to provide access across the land of others to benefit any and all landlocked property.

¶11 The two essential elements of an easement by necessity are referred to as unity of ownership and strict necessity, and the proponent of the easement must prove the necessary elements by clear and convincing evidence. *Watson v. Dundas*, 2006 MT 104, ¶¶ 32-33, 332 Mont. 164, 136 P.3d 973. The servient property owner may own his land for decades before finding it subjected to a claim of easement by necessity. If the easement is established, the servient property owner then suffers permanent loss of some of his property rights without any compensation. Therefore, an important component of the law is that easements by necessity are "considered with *extreme* caution" because they deprive the servient tenement owner of property rights "through *mere* implication." *Graham v. Mack*, 216 Mont. 165, 174, 699 P.2d 590, 596 (1985) (emphasis in original).

¶12 Unity of ownership exists where the owner of a tract of land severs part of the tract so as to create a landlocked parcel without expressly providing an outlet to a public road. *Watson*, ¶¶ 32, 33. A single owner must at one time have owned both the landlocked tract to be benefited by the easement (the dominant tenement) and the tract across which the easement would pass (the servient tenement). *Loomis v. Luraski*, 2001 MT 223, ¶ 49, 306 Mont. 478, 36 P.3d 862. Unity of ownership is established if the dominant and servient parcels were owned by one person or entity immediately prior to the severance that gives rise to necessity. *Schmid*, 199 Mont. at 238, 649 P.2d at 433. Here, for example, Frame's claim is based upon the contention that as among himself, Poole and Huber, his lot was landlocked by the LDS sale of the Poole and Huber lots.

5

¶13 An easement by necessity is created by operation of law at the time of severance of the parcels of land, *Hoyem Trust*, ¶ 17, but that may occur decades before a judicial determination of whether there is an easement by necessity. *Kelly v. Burlington Northern,* 279 Mont. 238, 244-45, 927 P.2d 4, 7-8 (1996) (unity of ownership traced to 1891).

¶14 The element of strict necessity requires that there be no practical access to a public road from the landlocked parcel except across lands that were formerly in common ownership. *Kelly*, 279 Mont. at 244, 927 P.2d at 7. Strict necessity must exist at the time the tracts are severed from the original ownership *and* at the time the easement is exercised. *Watson*, ¶ 32. A developed way of access to the landlocked parcel need not actually exist at the time of severance, and an easement by necessity is "distinguished from other implied easements on the simple ground that [a developed way] need not be in existence at the time of conveyance . . . ." *Schmid*, 199 Mont. at 237, 649 P.2d at 433.

¶15 The requisite necessity is the necessity to cross land formerly in common ownership for access to a public road. *Waters v. Blagg,* 2008 MT 451, ¶¶ 16-17, 348 Mont. 48, 202 P.3d 110. While an easement by necessity arises at the time of severance of the tracts from unified ownership, it can lie dormant through successive ownership changes until an owner elects to exercise the right. *Loomis*, ¶ 53.

¶16 In this case the evidence of unity of ownership arises, if at all, from the fact that in 1971 the Dears and then LDS owned all of the lots now owned by the parties. Dears sold all the lots to LDS which sold the lots to the parties or their predecessors, the last to sell being the Frame tract. The unity of ownership required to imply an easement by

6

necessity cannot exist in this case, however, because the State-owned bed and banks of the Dearborn River separate the Poole/Huber land from the Frame land. The State-owned land--the bed and banks of the Dearborn River--was never in common ownership with the Poole, Huber and Frame lots. While LDS owned and then sold each of the lots, the Poole and Huber lots could not have been severed from the Frame lot because they were never contiguous or attached to it. The River has always separated the tracts.

¶17 An easement by necessity can be implied, if at all, only to cross lands formerly held in unified ownership to reach a public road. An easement by necessity cannot be implied to merely reach the land of a third party which was not part of the original unified ownership. As previously noted, it is established that a claim of easement by necessity is viewed with extreme caution, and that the proponent must demonstrate the required elements by clear and convincing evidence. The court considered a similar situation in *Schmid* where a tract of land formerly in unified ownership had been severed into two parcels, both of which were separated from a public road by State-owned land. The owner of one parcel claimed an easement by necessity across the other parcel to reach the State-owned land in order to cross it to access the public road. This Court rejected the claim, holding that an easement by necessity

> can only arise out of the land granted or reserved by the grantor and never out of the land of a third party or a stranger to the title. Here, the land now owned by the State of Montana was not part of the original land owned by Junkins, and, therefore, not under "common ownership" or "unity of title." On this ground alone, appellants' claim for the way of necessity must fail.

*Schmid*, 100 Mont. at 238, 649 P.2d at 431. This Court continues to follow the *Schmid* rule. *Kullick v. Skyline Homeowners*, 2003 MT 137, ¶ 25, 316 Mont. 146, 69 P.3d 225;

7

*Watson*, ¶ 33; *Waters*, ¶¶ 16-17.  Here, as in *Schmid*, the State-owned land between the landlocked parcel and the public road defeats a claim of easement by necessity.  Because the Dearborn River dissects the lots, there was never unity of ownership.

¶18    While Frame disclaims an intent to seek an easement across the State-owned Dearborn River, that is not determinative of whether an easement by necessity may be implied here.  Under prevailing principles governing easements by necessity, and particularly as illustrated in *Schmid*, the requirement for unity of ownership can be met only if all the land necessary to provide the easement was once in unified ownership.

¶19    Frame has no easement by necessity to cross the Huber/Poole lots to reach the Dearborn River, and the decision of the District Court is reversed.

/S/ MIKE McGRATH

We concur:

/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE

Justice Patricia O. Cotter specially concurs.

¶20    I concur in the result reached by the Court and agree that the District Court's grant of summary judgment should be reversed.  I write separately because I do not wholly agree with the Court's rationale in reaching this decision

¶21 An easement by necessity has two required elements: (1) unity of ownership, and (2) strict necessity at the time the unified tracts are separated. To demonstrate unity of ownership, "the tract over which the easement is claimed must have been owned at some time by the same person holding title to the land that the easement would benefit." *Loomis v. Luraski*, 2001 MT 223, ¶ 49, 306 Mont. 478, 36 P.3d 862. The Court concludes that unity of ownership cannot exist in this case because the Dearborn River separates the Poole/Huber land from the Frame tract. I disagree with this conclusion for the simple fact that Frame is not seeking an easement across the Dearborn River. LDS owned all three parcels at one time and then severed them at a later date. Frame is only seeking an easement across the Poole/Huber tracts *to* the Dearborn River. He is not seeking an easement of necessity over state lands. Once Frame has an easement to the Dearborn River, he can then cross it in order to reach his land.

¶22 In this connection, I believe *Schmid* is distinguishable and the Court errs in relying upon it in this case. In *Schmid*, a claimant sought an easement across state-owned land and across the land of private landowners. The Court in *Schmid* correctly noted that a "way of necessity" in that case could not be claimed "over the lands of a third party or a stranger in title . . . ." *Schmid*, 199 Mont. at 236, 649 P.2d at 432. The claimants in that case argued that they had a way of necessity over private *and* state lands. *Schmid*, 199 Mont. at 236, 649 P.2d at 432. Here, Frame is not claiming an easement *over* state land, but merely claiming one *to* the river. Frame does not need an easement over the Dearborn River in order to lawfully access his land. The claimed easement of necessity would only burden the Poole or Huber tracts. Because there was unity of ownership

9

among the Poole, Huber, and Frame tracts before LDS severed these parcels, I would conclude, as the District Court did, that the unity of ownership requirement has in fact been satisfied.

¶23 However, due to the timing of the severance of the property in this case, I cannot conclude that "strict necessity" for an easement over the Poole tract existed at the time of severance. As the Court stated in *Albert G. Hoyem Trust v. Galt*, 1998 MT 300, ¶ 18, 292 Mont. 56, 968 P.2d 1135, "[a] right-of-way by absolute necessity is created by implied grant over the *remaining lands of the seller* when the owner of a tract of land sells a part of the tract that has no outlet to a public road except over the other lands of the seller." (Emphasis added.) LDS owned all three tracts at one time. In January 1971, LDS severed the Poole tract, and retained the other two. Once the Poole tract was severed from the other two, the *remaining lands* of LDS were the Huber and Frame tracts. At this point, LDS could use the Huber tract in order to reach the Dearborn River since the southern boundary of the Huber tract abuts the Dearborn. In August 1971, LDS severed the Huber tract from the Frame tract. At this point, the Frame tract actually became landlocked, or "riverlocked." However, if an easement of necessity to reach the Dearborn River (and then presumably access the Frame tract) could be said to exist at all in this case, it could exist only over the Huber tract due to the timing of the severances. That is because "[a] way of necessity depends solely upon 'strict necessity' at the time of conveyance . . . ." *Hoyem Trust*, ¶ 19. In other words, the existence of strict necessity is determined when land is severed or conveyed, and so the timing of the severance is a

10

critical component in determining whether or not strict necessity exists. *See also Wolf v. Owens*, 2007 MT 302, ¶ 19, 340 Mont. 74, 172 P.3d 124.

¶24 Because the Poole tract was severed from the LDS lands at a point in time earlier than the severance of the Huber/Frame tracts, Frame's claim for an easement by necessity over the Poole tract must fail as a matter of law. If an easement of necessity exists in this case, it could exist only over the Huber tract. Since Frame's claim was for an easement over the Poole tract, I concur in the Court's decision.


/S/ PATRICIA O. COTTER