No. 96-104

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

JAMES F. KELLY, JUDITH I. KELLY,
JAMES R. SMITH, JENNIFER C. SMITH,
HARRY C. PIPER, III, AND MARY E. M.
PIPER,

        Plaintiffs and Appellants,

  vs.

BURLINGTON NORTHERN RAILROAD
COMPANY, a Delaware corporation,
and MONTANA RAIL LINK, INC.,
a Montana corporation,

        Defendants and Respondents.



FILED

NOV 14 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Michael J. Lilly, Berg, Lilly, Andriolo & Tollefsen,
Bozeman, Montana

    For Respondent:

        Christopher B. Swartley, Datsopoulos, MacDonald &
Lind, Missoula, Montana (Montana Rail Link, Inc.);
Jeff Hedger, Kroschel & Yerger, Billings Montana
(Burlington Northern Railroad Co.)

Submitted on Briefs:  June 27, 1996

Decided:  November 14, 1996

Filed:

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

This is an appeal from the Montana Eighteenth Judicial District Court, Gallatin County. Following a nonjury trial, the District Court denied Plaintiffs' claims for the declaration of an easement by prescription, by necessity or by implication, and entered judgment for Defendants. From this judgment, Plaintiffs appeal. We reverse.

The following issues are raised on appeal:

1. Did the District Court err in concluding, as a matter of law, that Plaintiffs do not have an easement by necessity?

2. Did the District Court err in concluding, as a matter of law, that Plaintiffs do not have a private prescriptive easement?

3. Did the District Court err in failing to conclude, as a matter of law, that Plaintiffs did not extinguish the private prescriptive easement established by their predecessors-in-interest?

4. Did the District Court err in concluding, as a matter of law, that Plaintiffs do not have an easement by implication?

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs own land in Sunny Bear Estates Subdivision, Gallatin County, Montana. Plaintiffs James and Judith Kelly (Kellys) purchased Tract 1 on September 16, 1983, from Thelma Thompson and Hale Hubbard. Plaintiffs James and Jennifer Smith (Smiths) purchased Tract 2 on June 26, 1989, from Mervin and Charlotte Lefferts (Lefferts). Plaintiffs Harry and Mary Piper (Pipers) purchased Tracts 3-12 on May 8, 1990, from Sundance Realty

2

& Investments, Inc. Defendant Burlington Northern Railroad Company (BN) is the owner of a 400' right-of-way in Section 24, Township 2 South, Range 6 East, M.P.M., Gallatin County, Montana. Defendant Montana Rail Link, Inc. (MRL) claims a leasehold interest in the right-of-way owned by BN.

Sunny Bear Estates is bounded on the west, north and east by rugged mountains and private property. To the south, Sunny Bear Estates is bounded by MRL's and BN's railroad right-of-way. Railroad tracks pass through the railroad right-of-way and have existed since March 1883. Running parallel to and south of the railroad right-of-way is the East Frontage Road. The East Frontage Road (old U.S. Highway 10) was originally part of the Bozeman Trail constructed in 1864. Just to the south of the East Frontage Road lies Interstate 90, a controlled access highway.

The nearest public road to Sunny Bear Estates is the East Frontage Road. The East Frontage Road lies south of the railroad right-of-way. A gravel road leaves the East Frontage Road at its east end, runs north and crosses the railroad right-of-way at the planked crossing at issue, and enters Sunny Bear Estates. This railroad crossing is located in the SW 1/4 of the NW 1/4 of Section 24, Township 2 South, Range 6 East, M.P.M., Gallatin County, Montana. Frank King, a long time resident of the area, testified that he started using the crossing in 1926 and that he knew the crossing had been used for an undetermined time before 1926. The second closest road is Moffit Gulch Road, a county road, located

3

one mile to the west of Sunny Bear Estates, over rugged mountain terrain and private property.

Ward I. Stone was the original predecessor-in-interest to part of the property owned by the Kellys, Smiths and Pipers (collectively Plaintiffs). Stone filed his homestead claim on the SW 1/4 of the NW 1/4 of Section 24 (the property) on November 1, 1880, and received his federal patent September 13, 1890. Stone conveyed the property to Lester Willson on January 30, 1882. On January 5, 1891, Willson conveyed the property to Northern Pacific Railroad Company (NP Railroad), although the property was to be deeded to Northern Pacific Coal Company (NP Coal). Subsequently in 1891, as discussed later in this opinion, this error was corrected. As a result, NP Railroad owned a 400' railroad right-of-way across the property, while NP Coal held title to the remainder of the property.

Until October 1, 1984, Plaintiffs' predecessors-in-interest used the gravel road and railroad crossing without written permit or easement. On October 1, 1984, BN executed a Private Roadway and Crossing Agreement with Thelma Thompson, Hale Hubbard, the Lefferts, and the Kellys. In the agreement, BN granted a private railroad crossing permit to Thompson, Hubbard, the Lefferts and the Kellys as permittees. The permittees paid a fee for the right to use the crossing, and BN reserved the right to terminate the agreement with 30-days written notice. The permit was for a five-year period. The Kellys requested that their names be removed from the permit in April 1988. Thompson and Hubbard assigned their

4

interest in the private crossing permit to Sundance Realty on August 16, 1987. Subsequently, Sundance Realty assigned its permit to Pipers on April 27, 1990. However, in 1994, Pipers refused to pay the permit fee. Smiths have never executed or been assigned a private crossing permit.

Plaintiffs' railroad crossing permits apparently are not sufficient to constitute insurable access for title insurance purposes. Consequently, no lending institution will approve construction loans secured by Plaintiffs' properties. In fact, the Pipers have failed to secure financing to construct their home because they did not have insurable access. Therefore, to correct this problem, Plaintiffs filed a complaint seeking an order declaring that they hold legal access easements to their properties.

Plaintiffs filed their Complaint for Declaratory Judgment on February 25, 1991. Plaintiffs sought an order declaring that they held an easement for ingress and egress over and across Defendants' railroad right-of-way. Plaintiffs advanced four alternative theories upon which the relief could be granted: 1) public easement by prescription; 2) private easement by prescription; 3) private easement by implication; and 4) private easement by necessity. Defendants BN and MRL answered and denied the allegations of Plaintiffs' complaint, and requested that the District Court deny any easement across the railroad right-of-way.

After three motions for summary judgment were denied, the District Court held a nonjury trial on March 16, 1995. The

5

District Court entered Findings of Fact, Conclusions of Law, and Order on October 18, 1995. Pursuant to this Order, the District Court held that Plaintiffs' claims for declaration of an easement by prescription, necessity or implication were denied and entered judgment for Defendants. Following this Order, Plaintiffs filed a Motion to Amend Findings of Fact, Conclusions of Law, and Order on November 3, 1995. On December 15, 1995, Plaintiffs' motion was granted in part and denied in part. However, the District Court did not amend its Order denying Plaintiffs' claims. The District Court entered judgment in favor of Defendants on January 4, 1996. Plaintiffs appeal from this judgment.

## STANDARD OF REVIEW

Our standard of review for a district court's findings of fact is provided by Rule 52(a), M.R.Civ.P., which in part provides:

> Findings of fact . . . shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses . . . ..

We have adopted the following three-part test to interpret this rule:

> First, the Court will review the record to see if the findings are supported by substantial evidence. Second, if the findings are supported by substantial evidence we will determine if the trial court has misapprehended the effect of evidence. Third, if substantial evidence exists and the effect of the evidence has not been misapprehended, the Court may still find that "[A] finding is 'clearly erroneous' when, although there is evidence to support it, a review of the record leaves the court with the definite and firm conviction that a mistake has been committed."

Public Lands Access Ass'n, Inc. v. Boone and Crockett Club Found., Inc. (1993), 259 Mont. 279, 283, 856 P.2d 525, 527 (quoting

6

Interstate Production Credit v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287).

Our standard of review relating to a district court's conclusions of law is whether the tribunal's interpretation of the law is correct. Public Lands, 856 P.2d at 527.

In this case, the District Court concluded, as a matter of law, that Plaintiffs did not establish easements by prescription, by necessity or by implication. In particular, the District Court concluded that Plaintiffs did not have an easement by necessity because at the time unity of ownership was severed, strict necessity did not exist. We review this conclusion of law to determine whether the District Court properly interpreted the law governing easements by necessity.

### DISCUSSION.

**Did the District Court err in concluding, as a matter of law, that Plaintiffs do not have an easement by necessity?**

We hold that Plaintiffs do have an easement by necessity and reverse the District Court's legal conclusion to the contrary. Because this issue is dispositive, we will not address the remaining three issues raised on appeal.

In Amended Conclusion of Law No. 7, the District Court stated in part:

> The requirements of an easement by necessity are 1) unity of ownership, and 2) strict necessity at the time the unified tract is severed. . . . Unity of title existed on the SW1/4 of the NW1/4 of Section 24 until Northern Pacific Railroad Company quitclaimed its interest in the section to Northern Pacific Coal Company, and the Coal Company quitclaimed the 400' right-of-way-back to the Railroad on June 4, 1891. There is no

7

> evidence in the record that prior to the separation of title, or even at the time the title was separated, that strict necessity existed for the grantor to have an "easement to the outside world" across its remaining lands.

Plaintiffs contend that the District Court erred when it concluded that Plaintiffs did not establish an easement by necessity because they failed to establish strict necessity at the time unity of ownership was severed. Plaintiffs argue that the District Court erroneously applied the facts to the controlling law to reach this conclusion. Defendants argue that the District Court correctly concluded strict necessity did not exist. They support the court's conclusion by quoting Plaintiff Harry Piper's testimony that he had not negotiated to purchase an access easement from any neighboring property owners. We conclude that the District Court misinterpreted the strict necessity requirement for easements by necessity.

An easement by necessity is a subspecies of an implied easement. An easement by necessity arises through strict necessity for ingress and egress to a parcel of property. Graham v. Mack (1984), 216 Mont. 165, 175, 699 P.2d 590, 596. Strict necessity is defined by a lack of practical access to a public road for ingress and egress. Wangen v. Kecskes (1993), 256 Mont. 165, 169, 845 P.2d 721, 724. See also, Wagner v. Olenik (1988), 234 Mont. 135, 761 P.2d 822. That is, the purpose of an easement by necessity is "to permit communication with the outside world." Rathbun v. Robson (1983), 203 Mont. 319, 324, 661 P.2d 850, 853. We have defined an easement by necessity as follows:

8

> [w]here an owner of land conveys a parcel thereof which
> has no outlet to a highway except over the remaining
> lands of the grantor or over the land of strangers, a way
> of necessity exists over the remaining lands of the
> grantor. Similarly, a way of necessity is found when the
> owner of lands retains the inner portion conveying to
> another the balance, across which he must go for exit and
> access.

Big Sky Hidden Village Owners v. HVI (Mont. 1996), 915 P.2d 845, 850, 53 St.Rep. 379, 382 (quoting Schmid v. McDowell (1982), 199 Mont. 233, 237, 649 P.2d 431, 433). Furthermore, we have set forth two basic elements to establish an easement by necessity: 1) unity of ownership, and 2) strict necessity at the time the unified tracts are separated. Graham, 699 P.2d at 596.

After reviewing the District Court's findings of fact and conclusions of law, we find two different explanations as to how unity of ownership was severed in 1891: 1) NP Railroad reserved its 400' right-of-way when it quitclaimed the property to NP Coal or 2) NP Coal, after acquiring the property from NP Railroad, granted the 400' right-of-way back to NP Railroad by a separate quitclaim deed. In either case, the result is the same. Under the first explanation, NP Coal's land "ha[d] no outlet to a highway except over the remaining lands of the grantor [NP Railroad] or over the land of strangers, [therefore,] a way of necessity exist[ed] over the remaining lands of the grantor [NP Railroad]." See Big Sky, 915 P.2d at 850. Under the second explanation, "a way of necessity [existed] when the owner of lands [NP Coal] retain[ed] the inner portion conveying to another [NP Railroad] the balance, across which he [NP Coal] must go for exit and access." See Big Sky, 915 P.2d at 850. Therefore, as defined in Big Sky, a way of

9

necessity existed over the railroad right-of-way whether NP Railroad reserved or was granted the right-of-way. See Big Sky, 915 P.2d at 850.

However, after reviewing the record, we conclude that unity of ownership was severed as noted in the second explanation above. On May 20, 1891, NP Railroad quitclaimed the SW 1/4 of the NW 1/4 of Section 24 to NP Coal. Subsequently, on June 4, 1891, NP Coal granted NP Railroad a 400' right-of-way across the SW 1/4 of the NW 1/4 of Section 24. As a result of these conveyances, unity of ownership was severed. Therefore, the District Court properly concluded that Plaintiffs satisfied the first element, unity of ownership, to establish an easement by necessity. However, the District Court erred by concluding that strict necessity did not exist at the time unity of ownership was severed.

In 1891, NP Railroad possessed a 400' right-of-way through NP Coal's property, while NP Coal possessed title to the remainder of the property, and unity of ownership was severed. In 1891, NP Coal's property was surrounded to the west, north and east by rugged mountain terrain. The only possible way to access and exit the property was to the south. In fact, the nearest public road to NP Coal's property was the Bozeman Trail, which later became U.S. Highway 10, and currently is known as the East Frontage Road. The Bozeman Trail, constructed in 1864, ran along the same path as today's East Frontage Road which is located immediately to the south and adjacent to the railroad right-of-way. Because the railroad right-of-way separated NP Coal's property from the Bozeman

10

Trail, the only way to reach this public road was to cross the railroad right-of-way. Without access across the railroad right-of-way, NP Coal's property would be landlocked and unable to "communicate with the outside world." That is, at the time unity of ownership was severed, the property lacked practical access to a public road for ingress and egress. Therefore, a strict necessity existed. Consequently, an easement by necessity arose.

Defendants attempt to bolster the District Court's conclusion that strict necessity did not exist by quoting Plaintiff Harry Piper's testimony that he had not negotiated with his neighbors for an alternative access easement. Defendants claim that this testimony "clearly indicates that strict necessity does not exist for an easement across the railroad right-of-way." We disagree. Whether Plaintiffs currently have the ability to obtain access easements over their neighbors' properties is irrelevant. Evidence of strict necessity must be shown to have existed *at the time unity of ownership was severed*. Graham, 699 P.2d at 596. Plaintiffs established that the property's unity of ownership was severed in 1891 and that strict necessity existed at that time. Defendants' evidence concerning Plaintiffs' easement options *at the time of trial* does not affect Plaintiffs' claim that an easement by necessity arose from land conveyances occurring in the last century. See State v. Cronin (1978), 179 Mont. 481, 488, 587 P.2d 395, 399-400.

Thus, Plaintiffs' indirect evidence, discussed above, establishes that an easement by necessity arose in 1891 because

11

strict necessity existed at the time unity of ownership to the property was severed. Not only was NP Coal's property surrounded to the west, north, and east by rugged mountain terrain, but was also bounded to the south by the railroad right-of-way. This set of circumstances effectively left NP Coal's property landlocked, and the requirement of strict necessity was met because the property was without access to a public road. Logic dictates that the only practical means to access or exit the property was to cross the railroad right-of-way to reach the nearest public road, the Bozeman Trail. In fact, Frank King, a long time resident of the area, testified that in 1926 he started using the planked crossing at issue and that he knew the crossing had been used for an undetermined time before 1926. Accordingly, we reverse the District Court and hold that Plaintiffs have an easement by necessity to cross Defendants' railroad right-of-way at the planked crossing at issue which is located in the SW 1/4 of the NW 1/4 of Section 24, Township 2 South, Range 6 East, M.P.M., Gallatin County, Montana.

Reversed.

Justice

We Concur:

12

W. William Rehnquist

Justices

13

November 14, 1996

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Michael J. Lily
Berg, Lily, Andriolo & Tollefsen, P.C.
910 Technology Blvd., Ste. A
Bozeman, MT 59715

Mr. Jeff Hedger
2825 3rd Avenue North, Ste. 607
Billings, MT 59101

Mr. Christopher B. Swartley
201 West Main, Ste. 201
Missoula, MT 59802

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy