CHIEF JUSTICE McGRATH
delivered the Opinion of the Court.
¶1 This case arises from a dispute in which the Ashbys seek an easement by necessity across properties owned by Maechling, Alcosser and Dalton (referred to collectively as Maechlings). The District Court of the Twenty-First Judicial District held that Ashbys had an easement by necessity and defined the scope of the easement. Both sides appeal and we affirm.
¶2 Ashbys present issues for review that we restate as follows:
¶3 Issue One: Whether the District Court erred in determining the scope of the easement.
¶4 Issue Two: Whether the District Court erred in failing to award Ashbys damages based upon a claim of interference with the easement.
¶5 Maechlings present issues for review that we restate as follows:
¶6 Issue Three: Whether the District Court erred in declaring that an implied easement by necessity exists across property of Maechlings to reach property owned by Ashbys.
¶7 Issue Four: Whether the District Court erred in determining that West County Line Road is a public road.
¶8 Issue Five: Whether the District Court erred in determining that the easement by necessity allows access to Ashbys’ property for one residence. We deem this to be related to the scope of the easement.
*70 PROCEDURAL AND FACTUAL BACKGROUND
¶9 The property at issue is west of U.S. Highway 93 in northern Ravalli County, Montana, and is bordered on the north by Missoula County. In 1932 Ravalli County acquired tax deed title to a large tract of land that included all of the property now owned by the parties. At that time the West County Line Road, which runs east-west along the Ravalli-Missoula County line, entered the east end of the large Ravalli County tract and provided access to it. In 1934 the County sold to George Jones the property now owned by Maechlings. The County retained the property now owned by Ashbys and sold it to Robert McKenzie in 1935.[1] The Ashbys’ tract is 120 acres and lies to the west of Maechlings’ property. Maechling and Alcosser own and reside on 30 acres immediately east of Ashbys’ land, and Dalton owns and resides on a tract immediately east of Maechling and Alcosser.
¶10 No established roads have ever entered the Ashbys’ property and no permanent residence or agricultural use was ever established there. There is an irrigation ditch that crosses the parcel, but it has not been developed other than three episodes of logging, one in the 1800s, another in the 1970s and another conducted by Ashbys in 2007.
¶11 Ashbys bought their property in late 2004 along with a separate 150 acre parcel from the same seller. They knew at the time of purchase that there was no established access to the property and that their title insurance policy excepted access. Maechlings had for some time prior to 2004 maintained a locked gate on their property at the end of West County Line Road. The Road did not and apparently never has extended to the property now owned by Ashbys. In 2005 Ashbys wrote Maechling and Alcosser claiming an easement by necessity across their land for purposes of logging and offering not to sue them if Maechling and Alcosser sold Ashbys a perpetual non-exclusive easement for $10. Maechlings declined the offer, and this event precipitated Ashbys’ claim for interference with the easement.
¶12 Ashbys sued in July 2005 seeking to establish that they had an easement by necessity across Maechlings’ property to reach their 120-acre parcel, and for damages based upon Maechlings’ alleged interference with the claimed easement. In February, 2006 Ashbys moved for summary judgment on the easement issue. In October, 2006 the District Court denied Ashbys’ motion on the ground that they had *71 not met their burden to show by clear and convincing evidence that the easement by necessity existed.
¶13 In March, 2007 Ashbys again moved for summary judgment, and in June Maechlings also moved for summary judgment. On August 31, 2007 the District Court denied Maechlings’ motion for summary judgment and granted summary judgment to Ashbys, holding that West County Line Road is a public road, and that Ashbys have an easement by necessity across Maechlings’ land to reach the road. Immediately after the District Court ruling, Ashbys arrived on Maechlings’ land at the end of West County Line Road, removed the locked gate and constructed a road to their property across Maechlings’ property. Maechlings have not blocked the access since the August 31, 2007, District Court ruling.
¶14 In March, 2008, Ashbys moved for partial summary judgment on the issue of the scope of the easement, requesting that the “Court determine, as a matter of law, that the scope of the easement that arose in 1934 is unlimited other than that such use must be in accordance with laws that govern the normal use and development of real property in Ravalli County and the State of Montana.”[2] Maechlings also moved for reconsideration of the August 31, 2007 order regarding the existence of an easement by necessity.
¶15 In July, 2008, the District Court denied Maechlings’ motion for reconsideration, denied Ashbys’ motion on the scope of the easement and granted summary judgment for Maechlings and against Ashbys on the claim for interference with the easement. The District Court then held an evidentiary hearing in September, 2008 on the scope of the easement. Witnesses testified and exhibits were received.
¶16 The District Court entered Findings of Fact, Conclusions of Law and Judgment in November, 2008, and amended findings in January, 2009.
STANDARDS OF REVIEW
¶17 This Court reviews a district court’s decision on a motion for summary judgment de novo, using the same standards provided in M. *72 R. Civ. P. 56. Spinler v. Allen, 1999 MT 160, ¶ 14, 295 Mont. 139, 983 P.2d 348.
¶18 A district court’s findings of fact will be upheld if they are supported by substantial credible evidence. Steiger v. Brown, 2007 MT 29, ¶ 16, 336 Mont. 29, 152 P.3d 705. This Court reviews a district court’s conclusions of law to determine whether they are correct. Id.
DISCUSSION
¶19 We first consider the pivotal issue of whether the District Court properly held that an easement by necessity exists across Maechlings’ land to access the Ashby land. Montana law has long recognized the existence of easements by necessity as a species of implied easements. At the same time, easements by necessity are “considered with extreme caution” because they deprive the servient tenement owner of property rights “through mere implication.” Graham v. Mack, 216 Mont. 165, 174, 699 P.2d 590, 596 (1984) (emphasis in original). Easements by necessity arise from a legal fiction that the owner of a tract of land would not isolate a portion of it without having intended to leave a way of access to the parcel over the lands being severed. Wolf v. Owens, 2007 MT 302, ¶ 16, 340 Mont. 74, 172 P.3d 124. Two essential elements of an easement by necessity are unity of ownership and strict necessity. Watson v. Dundas, 2006 MT 104, ¶ 32, 332 Mont. 164, 136 P.3d 973. The proponent of the easement by necessity must prove the necessary elements by clear and convincing evidence. Watson, ¶¶ 33, 40-41.
¶20 Unity of ownership exists where the owner of a tract of land severs part of the tract without providing an outlet to a public road. Watson, ¶¶ 32, 33. A single owner must at one time have owned both the tract to be benefited by the easement and the tract across which the easement would pass. Loomis v. Luraski, 2001 MT 223, ¶ 49, 306 Mont. 478, 36 P.3d 862. Unity of ownership can originate decades before the judicial determination of whether there is an easement by necessity. Kelly v. Burlington Northern, 279 Mont. 238, 244-45, 927 P.2d 4, 7-8 (1996) (unity of ownership traced to 1891). The easement by necessity is created by operation of law at the time of severance of the parcels of land. Albert G. Hoyem Trust v. Galt, 1998 MT 300, ¶ 17, 292 Mont. 56, 968 P.2d 1135.
¶21 In this case it is undisputed that in 1932 Ravalli County owned a tract of land referred to as the tax deed parcel that included the land now owned by all parties to this litigation. It is also undisputed that in 1934 the County severed parts of the larger tract to Maechlings’ predecessors in interest and then to Ashbys’ predecessors in interest. *73 Therefore, the unity of ownership requirement was clearly met.
¶22 The element of strict necessity requires that there is no practical access to a public road from the landlocked parcel. Kelly, 279 Mont. at 244, 927 P.2d at 7. Strict necessity must exist at the time the tracts are severed from the original ownership and at the time the easement is exercised. Watson, ¶ 32.[3] A developed way of access to the landlocked parcel need not actually exist at the time of severance, and an easement by necessity is “distinguished from other implied easements on the simple ground that [a developed way] need not be in existence at the time of conveyance ....” Schmid v. McDowell, 199 Mont. 233, 237, 649 P.2d 431, 433 (1982).[4]
¶23 In this case the District Court concluded upon a review of the evidence that there was no evidence of any practical road to connect Ashbys’ parcel to a public road. Severance of the parcel now owned by Maechlings’ landlocked the parcel now owned by Ashbys. No substantial evidence appears to contradict that conclusion.
¶24 Maechlings contend that the District Court should have found that quiet title actions brought in 1971 and 2001 extinguished any easement by necessity to serve the Ashby tract. The District Court considered but rejected the contention that the decrees in those two actions extinguished the easement by necessity, finding that while the predecessors to the Ashbys were well known, they were not made parties to the actions. The District Court further found that service by publication upon “all unknown persons” was not effective to bind known individuals who can be identified with reasonable diligence. Baertsch v. Lewis & Clark County, 256 Mont. 114, 125, 845 P.2d 106, 113 (1992). The District Court therefore properly decided that the prior quiet title actions did not bar the easement.
¶25 The dissent argues that Ashbys failed to demonstrate strict *74 necessity because Ravalli County, as the predecessor owner of the relevant parcels, had the power to condemn an easement across the servient property to provide access to a public road. First, this issue should not be considered because, as the dissent acknowledges, it was not raised in the District Court and was noted only in passing on appeal. Second, the primary authority for the condemnation rule is Leo Sheep Co. v. U.S., 440 U.S. 668, 99 S. Ct. 1403 (1979). Leo Sheep arose out of the checkerboard land ownership that resulted from grants of alternate sections of Federal land to the Union Pacific Railroad in the 1860s. The United States argued that it had an easement by necessity across lands formerly granted to the Union Pacific but now owned by Leo Sheep Co. to reach a recreation area on Federal land. The Supreme Court held that because the United States could condemn a right of way it could not demonstrate the strict necessity required to secure an easement. Since the Ashbys are not a governmental entity with the power of eminent domain, the Leo Sheep case does not resolve the present dispute.[5]
¶26 Therefore, since there was clear and convincing evidence of both unity of ownership and strict necessity, the District Court properly concluded that an easement by necessity existed to provide access to the Ashby tract.
¶27 The second issue we consider is whether the District Court properly concluded that the West County Line Road is a public road. An easement by necessity exists, if at all, to connect the landlocked tract of land to a public road. Watson, ¶ 32.
¶28 Maechlings contended that the West County Line Road is not a public road and therefore an easement by necessity could not be implied to provide access to it. The District Court received and carefully considered substantial historical evidence as to the nature of the West County Line Road. Based upon this evidence the District Court granted summary judgment to Ashbys, concluding that Ravalli County had declared the Road to be a public highway in 1894, and that the Road was already opened at that time with the exception of a one-half mile section. The District Court also concluded that the Road *75 terminated at the northwest corner of Section 3, on land now owned by Maechlings, but not extending to the land now owned by Ashbys.
¶29 Maechlings contended in District Court that the West County Line Road was never properly adopted as a public way. The District Court properly concluded that the Road is a public way and has been since 1894, relying on decisions from this Court recognizing the difficulty of reconstructing the detailed history of county roads created as much as 100 years ago. In Reid v. Park County, 192 Mont. 231, 236, 627 P.2d 1210, 1213 (1981), this Court adopted “the rule that it is sufficient if the [county] record taken as a whole shows that a public road was created. Otherwise the burden on the public in a particular case to prove a public road was created so many years ago may well be insurmountable.” Requiring production of documentary evidence of events that occurred long ago can be impracticable, Powell County v. 5 Rockin’ MS Angus Ranch, 2004 MT 337, ¶ 25, 324 Mont. 204, 102 P.3d 1210, and there is a disputable presumption that official duty has been regularly performed. Section 26-1-602(5), MCA. Discrepancies in the description or location of a road in old county documents are not sufficient to turn a county road into private property. Powell County, ¶ 27.
¶30 Here, the fact that the full length of the road was not opened in 1894 does not alter its status as a county road. Bolinger v. Bozeman, 158 Mont. 507, 509, 493 P.2d 1062, 1063 (1972). Mere non-use, even for extended periods of time, is generally insufficient alone to indicate an intent to abandon a public way. Baertsch, 256 Mont. at 122, 845 P.2d at 111.
¶31 The record in this case, as explained in detail by the District Court’s orders, sufficiently established that Ravalli County created and dedicated the West County Line Road as a public road. The District Court was correct in concluding that there were no material facts concerning whether the Road was created and that summary judgment on that issue was appropriate.
¶32 We next consider the issue of the scope of Ashbys’ easement by necessity. Both sides appeal from the District Court’s determination of the scope of the easement. Ashbys contend that the easement should be broader, while Maechlings contend that it is too broad.
¶33 The issue arose in the District Court upon Ashbys’ motion for partial summary judgment in support of their contention that the scope of the easement is unlimited as long as it serves some use of the property and that use complies with applicable law. Ashbys have not specified any use they contemplate for their land, and in fact disclaim any plans for using it. They similarly did not specify the parameters *76 of the easement by necessity, other than asserting that it must be sufficient to allow them to make any lawful use of the property.
¶34 After conducting an evidentiary hearing and after extensive review of the facts and law, the District Court concluded that the scope of the Ashby easement
is approximately 12-15 feet wide, as it currently exists, for one single-family residential, non-commercial use by owners of the Plaintiffs’ Property, their lawful successors and assigns, including recreational access to wildlands on Plaintiffs’ property and for irrigation system inspection, repair, maintenance and use, and use by Plaintiffs related to forest thinning and logging consistent with reasonable and responsible forest practices and for no other. All other uses or use by persons other than lawful owners, successors or assigns of Plaintiffs’ property shall exceed the scope of this easement and is prohibited. This easement by necessity shall automatically terminate if and when other legal alternate easement access is obtained to Plaintiffs’ Property.
¶35 Ashbys contend that the scope of their easement must be unlimited in order to serve any use they can lawfully make of the property. Maechlings contend that the easement as decreed is too broad in that it allows use for residential purposes and there has never been a residence on the Ashby property.
¶36 The law in Montana on the scope of an implied easement by necessity begins with Herrin v. Sieben, 46 Mont. 226, 127 P. 323 (1912), one of the first Montana cases on the subject. In that case this Court held that easements by necessity cannot be used “at will,” but must be exercised with “due regard to the rights of both parties” so that the use “does not encroach upon the land of his grantor further than circumstances render it necessary.” Sieben, 46 Mont. at 235, 127 P. at 328. The District Court held that the Sieben case stands for the “clear expectation that the dominant estate’s access needs will be balanced with the servient estate’s interests, and restricted in that such access cannot lawfully encroach upon the servient estate more than the circumstances rendered necessary.”
¶37 This is a reasoned and appropriate statement of the basic scope of an easement by necessity. If such easements were unlimited, the property rights and property values of the servient estate owner could be materially impacted by a right of easement that in the final analysis arises only from a legal fiction. The property rights of the servient estate owner merit more protection under Montana law than would be the case if easements by necessity were unlimited. Those authorities that allow easements by necessity to be expanded to fit any lawful use *77 imagined by the dominant estate owner fail to give sufficient consideration to the rights of the servient estate owner, which are no less important. See e.g. Morrell v. Rice, 622 A.2d 1156 (Me. 1993). Implied negative easements are viewed with “extreme caution” since the servient landowner loses the use and control of some portion of his property. Graham, 216 Mont. at 174, 699 P.2d at 596. This extreme caution should be observed both in determining whether an easement by necessity exists and, if so, in determining its scope.
¶38 The District Court also relied upon language in Tungsten Holdings v. Kimberlin, 2000 MT 24, 298 Mont. 176, 994 P.2d 1114, as to the scope of implied easements. Tungsten did not involve an easement by necessity, but this Court endorsed the concept that a decision on the scope of an implied easement should consider “the actual uses being made [of the dominant estate] at the time of the severance, such uses as the facts and circumstances show were within the reasonable contemplation of the parties at the time of the conveyance, and such uses as the parties might reasonably have expected from future uses of the dominant tenement.” Tungsten, ¶ 27. Such evidence may be scarce in the case of an easement by necessity when, as in the present case, the severance occurred decades before issues arose as to the use of the easement. Nonetheless, if such evidence is available, it should be considered in determining the scope of an easement by necessity.
¶39 Here, there is no evidence of the actual contemplation of Ravalli County or its purchasers as to the present and future use of the property in 1934. The County acquired the land in a Depression-era tax foreclosure but was able to sell portions of it and return it to the tax rolls a few years later. There is no evidence that the County ever used the property and it is therefore likely that the County’s interest and expectation at the time was to realize tax income from the tract. There is evidence that the Ashby land was at that time forested wildland with no established public vehicular access route. The evidence also shows that the Ashby land had been logged in the late 19th century but otherwise had been used, if at all, for wildland recreational purposes. Similarly, the evidence is that at the time of severance the area surrounding the County tax parcel was rural, forested, agricultural and the site of scattered rural residential dwellings.
¶40 Therefore, nothing in the history or condition of the property at the time of severance would support a finding that the extent of the implied easement by necessity across the land of the servient estates should be unlimited.
*78 ¶41 The District Court also properly considered that an easement by necessity, while not unlimited in scope, is not limited to the precise uses and prevailing technology at the time of severance. So, if the severance occurred at a time prior to the general use of motor vehicles and electric power, an easement by necessity may still allow for “reasonable technological developments” as long as the use does not cause unreasonable damage or interference with the rights of the servient estate owner. See e.g. Schumacher v. Department of Natural Resources, 663 N.W.2d 921, 924 (Mich. App. 2003). Thus, modern vehicle access and utility services may be allowed as part of an easement by necessity even though the easement arose as a legal matter before the general use of such improvements.
¶42 The District Court here properly recognized these principles and allowed for non-commercial recreational and residential vehicular access by road to the Ashby property. The District Court expressly did not address gates, cattle guards, underground or other utility transmission lines, because “[although invited to do so by the Court, neither party” addressed those issues.
¶43 Ashbys did not provide evidence upon which the District Court might have fashioned different parameters for the easement by necessity. They disclaimed having any specific plans, uses or needs for the property and only asserted that they had the right to do anything that the law allowed and that the easement must accommodate their future decisions, whatever they might be. By that reasoning, such disparate uses as a cattle feed lot, a gravel mine, a dirt track motorcycle racing venue or a high-density subdivision all might be legally permissible on the Ashby tract. It is not reasonable to impose such potential unknown and unlimited burdens on Maechlings’ property.
¶44 The District Court properly considered the current nature of the area in which the property is located in northern Ravalli County. The area surrounding the Ashby tract is mixed. To the immediate west is Forest Service land. The area is largely rural with scattered, low-intensity residential uses on larger lots or acreage. The District Court’s decision to allow one single-family residence on the Ashby property, to be served by the easement, is a reasonable reflection of land use as it has developed in the area. The District Court reached a reasoned and proper decision on the scope of the easement by necessity.
¶45 We next consider Ashbys’ claim that the District Court erred in not awarding them damages for Maechlings’ interference with the easement. Ashbys claim that they are entitled to damages of over $100,000 because Maechlings’ rejection of the $10 perpetual easement *79 in 2005 caused them to have to acquire a temporary easement from a third party to conduct the logging on the property in 2007. The District Court granted summary judgment against Ashbys on this claim.
¶46 The District Court noted that prior to its ruling in August, 2007, holding that the easement by necessity existed, Ashbys’ motion for summary judgment on the existence of the easement had been denied. Further, after August 31, 2007 Ashbys used the easement without interference from Maechlings.
¶47 While the essential acts that gave rise to the easement by necessity arose in the 1930s, Ashbys’ right to the easement was not established until August 31,2007. Prior to that time Maechlings could not have wrongfully interfered with Ashbys’ easement. Stokes v. State, 2007 MT 169, ¶ 10, 338 Mont. 165, 162 P.3d 865. We therefore affirm the District Court’s determination that Ashbys did not have a claim against Maechlings for interference with the easement by necessity.
¶48 The District Court’s orders appealed from are affirmed.
JUSTICES COTTER, WHEAT and MORRIS concur.

 The County-owned parcel, referred to as the “tax deed” property encompassed the land now owned by all the parties on its northern end, along with other property to the south now owned by third parties.

 Ashbys did not disclose any plans to use the property, and in fact have stated that they have no short-term plans or specific plans to use it other than for the logging completed in 2007 and for incidental maintenance and upkeep of the existing irrigation ditch that crosses the land. When asked at a hearing before the District Court why he needed access to the property, Mr. Ashby stated: “Because we were granted the right to gain access by this Court, is my understanding.” At the same time, Ashbys have contended that their use of the land is limited only by applicable law and that the easement should be equally broad.

 Maechlings contend that a prior easement agreement among predecessors to the parties provided access to the Ashby parcel and therefore extinguished the easement by necessity. However, there is no evidence that the easement agreement was still in effect and useable at the time Ashbys asserted the right to an easement by necessity.

 Maechlings argue that under Leisz v. Avista Corp., 2007 MT 347, ¶ 48, 340 Mont. 294, 174 P.3d 481, the proponent of an easement by necessity must demonstrate an actual use of the landlocked property, such as a residence, at the time of severance. The language they rely on in Leisz, ¶ 48 was not necessary to the decision in that case and is therefore (beta. In addition, there is no indication in the Leisz opinion that the Court intended to overrule any prior law on easements by necessity or intended to add any new requirements to be met by the proponent of an easement. Nothing in Leisz, should be applied to require that the proponent of an easement by necessity must demonstrate actual use of the land at the time the tract was severed from common ownership.

 The dissent also cites Simonson v. McDonald, 131 Mont. 494, 311 P.2d 982 (1957), for the proposition that there is no strict necessity where the right of condemnation provides the owner of a landlocked parcel the right to acquire access. Simonson also completely abolished easements by necessity, and was subsequently overruled by Thisted v. Country Club Tower Corp., 146 Mont. 87, 405 P.2d 432 (1965), which was then overruled on other grounds by Gray v. Billings, 213 Mont. 6, 689 P.2d 268 (1984). We find no basis in this scenario to resurrect a part of the Simonson opinion.