FILED

07/12/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0641

DA 15-0641

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 167

STEVEN LOW, VINCENT HARKER, JUDY WALTERS,
FREDERICK WALTERS, THOMAS GILDAY, SANDRA
HARKE, JOHNSON TESTAMENTARY TRUST, ECHO
SKILPADDE TRUST, AND WILLIAM BURTON,

        Plaintiffs and Appellants,

    v.

KENNETH REICK AND KATHLEEN REICK,

        Defendants and Appellees.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                In and For the County of Flathead, Cause No. DV-12-1359C
                Honorable Heidi Ulbricht, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Evan F. Danno, Danno Law Firm, P.C., Kalispell, Montana

        For Appellee:

                Anne G. Biby, Hash, O'Brien, Biby & Murray, PLLP, Kalispell, Montana

                        Submitted on Briefs:  March 30, 2016

                               Decided: July 12, 2016

Filed:

_____
              Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1     The parties own real property in Echo Chalet Village on a peninsula in Echo Lake in Bigfork, Flathead County, Montana.  Kenneth and Kathleen Reick own the parcel on the southern end of the peninsula through which the sole vehicular road granting access to the northern lots owned by Plaintiffs/Appellants lies.  The Reicks purchased the property in 1983 under a warranty deed and subject to a long-term 20-foot existing easement allowing Appellants access to their respective properties.  The access road runs parallel to Echo Lake and consists of various low-elevation sections subject to flooding.  In 1992, the parties entered into a road maintenance agreement (Maintenance Agreement) which set forth how, when, and at whose expense maintenance of the access road would occur.  Following a flood and a dispute over repair and maintenance of the road, Appellants filed a complaint in November 2012, seeking declaratory judgment that the Maintenance Agreement was valid and enforceable.  Seeking specific performance and damages, they alleged that the Reicks breached the Maintenance Agreement.  The Reicks counterclaimed and both sides sought summary judgment. The Eleventh Judicial District Court granted partial summary judgment to the Reicks and subsequently conducted a bench trial on the remaining issues.  The court then entered judgment in favor of the Reicks.  Appellants appeal the District Court's ruling on summary judgment and its post-trial findings, conclusions, orders and judgments.  We affirm in part and reverse in part.

**ISSUES**

¶2      A restatement of the issues on appeal is:

¶3      Did the District Court err by ruling that the Reicks' lot is encumbered by a single easement, which is the existing road, measured 10 feet from each side of the road's centerline?

¶4      Did the District Court err by rejecting Appellants' claim of authority to sign and submit an application for a lakeshore improvement permit?

¶5      Did the District Court err by concluding the Maintenance Agreement is unenforceable against the Reicks for lack of consideration?

¶6      Did the District Court err by ruling that the Reicks did not breach the Maintenance Agreement?

¶7      Did the District Court err by concluding that Appellants breached the Road Detour Agreement, and awarding damages to the Reicks?

¶8      Did the District Court err by concluding that the Reicks did not convert the Appellants' fill material?

¶9      Did the District Court err by ordering Appellants to pay Reicks' counterclaim-related attorney's fees and costs?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶10     Echo Chalet Village in Bigfork, Montana, consists of 21 lots numbered 24-44 and is located on a peninsula that extends northward into Echo Lake.  The parties to this case own the majority of these lots but some lot owners have been dismissed and are not parties to this action.

3

¶11 Testimony established that in the early 1950s, prior to creation of the subdivision, a road was established to service a single home on the north end of the peninsula. This road was referenced in a 1968 land survey. In 1974, the two families who owned the peninsula at that time, Masons and Mastoliers, executed a subdivision plat of Echo Chalet Village which included a 20-foot wide road easement which ran in part along the west boundary of Lot 24. Mason owned Lots 24 and 25. Lot 24 is located on the southern end of the peninsula through which all northern lot owners must pass to access their properties.

¶12 The Reicks purchased Lot 24 from Mason in 1983 under a warranty deed and subject to a long-term existing easement establishing the access road to Lots 25-44 (the Easement Road). The Reicks occasionally use the Easement Road but it is generally not necessary to their use of their property. The Easement Road runs parallel to Echo Lake and consists of various low-elevation sections subject to occasional flooding.

¶13 In 1992, the parties (or their predecessors) entered into the Maintenance Agreement which provided:

1. Expenses and/or labor will be shared equally among the respective parties in maintaining the access.

2. Repairs or maintenance on the access shall be required when a decision is reached by a majority of the owners of these properties. Repairs and maintenance shall then proceed on a schedule and in a manner agreed upon by the majority.

3. This agreement shall be deemed and is intended to run with the land and shall be binding upon the undersigned, their heirs, personal representatives, successors, and assigns until such a time as said roadway/access shall be dedicated to and accepted for use as a public roadway by a governmental entity.

4

¶14    Subsequently, Echo Lake topped its banks on two occasions—1997-98 and 2011-12. The earlier flood did not render the Easement Road totally impassable as the northern property owners could access their properties by driving slowly through the flooded areas. The 2011 flood, however, rendered low elevation portions of the Easement Road impassable. In June 2011, Appellants and the Reicks entered into a Road Detour Agreement (Detour Agreement) in which the parties agreed to bring in gravel and construct an elevated "spur road" utilizing the Reicks' private driveway and contiguous property. The spur road tied back into the access road at a higher-elevation northerly location. The County approved the construction of the spur road. The Detour Agreement provided that the materials creating the spur road would be removed when the flood waters subsided and the Reicks' property would be restored to its pre-spur-road condition by the northern property owners. In addition to building the spur road, the parties utilized purchased fill material to elevate low sections of the Easement Road. The Reicks enabled this by submitting a signed application for an emergency lakeshore improvement permit to allow the temporary elevation of the Easement Road. The parties used the spur road throughout 2011 as well as in the spring of 2012 when Echo Lake's waters rose again but not as dramatically.

¶15    Subsequently, the Reicks posted a sign prohibiting use of the spur road by heavy construction vehicles but allowed northern property owners in their personal vehicles to continue using the detour road. In late summer 2012, the flood waters receded and the County and the Reicks demanded the fill material be removed. Appellants requested that the Reicks obtain a lakeshore permit to allow them to take the fill material from the spur

5

road and use it to elevate the Easement Road. For multiple reasons, the Reicks refused. Appellants thereafter refused Reicks' demands to remove the fill material.

¶16 In November 2012, the Plaintiffs (now Appellants) filed this action in the Eleventh Judicial District Court seeking declaratory judgment that the 1992 Maintenance Agreement was valid and enforceable and authorized them to elevate the Easement Road. Seeking specific performance and damages, they alleged that the Reicks breached the Maintenance Agreement.

¶17 In late summer 2013, the Reicks again demanded that Appellants remove the spur road fill and restore their property pursuant to the Detour Agreement. Appellants refused. Thereafter the Reicks spent $5,300 restoring their property to its June 2011 condition. Because the Reicks unilaterally removed and disposed of the fill material, Appellants amended their Complaint to add a count for conversion. The Reicks counterclaimed for breach of the Detour Agreement, *quantum meruit* seeking to recover the value of providing the spur road and the later costs of removing it, and breach of the implied covenant of good faith.

¶18 In February 2014, Appellants moved for summary judgment claiming they had *multiple* easement rights over Reicks' property, the combination of which would allow them to unilaterally re-construct the Easement Road at a higher elevation. They further asserted that under the Maintenance Agreement, they did not require Reicks' signatures to submit applications for lakeshore permits for the purpose of improving the Easement Road. Appellants also sought summary judgment on their conversion allegations. Reicks responded and filed a cross-motion for partial summary judgment.

6

¶19 In May 2014, the District Court denied Appellants' summary judgment motion, and granted summary judgment to the Reicks on two issues. The court concluded that: (1) a single easement exists over Lot 24, not multiple easements; (2) Appellants are not authorized to submit lakeshore permit applications without the Reicks' participation; and (3) the Reicks did not breach the Detour Agreement.

¶20 In February 2015, the District Court conducted a non-jury trial with respect to the remaining issues. In September 2015, the court issued its Findings of Fact, Conclusions of Law and Order awarding judgment to the Reicks. The court reiterated its rulings on summary judgment and further concluded that: (1) Appellants breached the Detour Agreement and were liable for the Reicks' fees and costs associated with this issue; (2) the Maintenance Agreement is unenforceable against the Reicks for want of consideration; (3) the Reicks did not commit conversion by removing and disposing of the spur road fill material; and (4) Appellants must pay the costs incurred by the Reicks to remove the fill material and restore their property along with prejudgment interest.

¶21 Appellants appeal the District Court's ruling on summary judgment and its post-trial findings, conclusions, orders and judgments. We affirm in part and reverse in part.

## STANDARD OF REVIEW

¶22 We will affirm the factual findings of a district court sitting without a jury unless those findings are clearly erroneous. A district court's findings are clearly erroneous if they are not supported by substantial evidence, if the district court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. To determine whether

7

substantial credible evidence supports the district court's findings, we review the evidence in the light most favorable to the prevailing party. We review a district court's conclusions of law for correctness. *Jacobson v. Bayview Loan Servicing, LLC,* 2016 MT 101, ¶ 19, 383 Mont. 257, 371 P.3d 397 (internal citations omitted).

¶23 We review a district court's entry of summary judgment de novo. Summary judgment is appropriate when the moving party demonstrates both the absence of any genuine issues of material fact and entitlement to judgment as a matter of law. *Mont. Immigrant Justice Alliance v. Bullock*, 2016 MT 104, ¶ 14, 383 Mont. 318, 371 P.3d 430 (internal citations omitted).

¶24 We review a district court's conclusion regarding the existence of legal authority to award attorney fees for correctness. If legal authority exists, we review a district court's order granting or denying attorney fees for abuse of discretion. *Mont. Immigrant Justice Alliance*, ¶ 15.

**DISCUSSION**

¶25 *Did the District Court err by ruling that the Reicks' lot is encumbered by a single easement, which is the existing road, measured 10 feet from each side of the road's centerline?*

¶26 Appellants claim that Lot 24 is encumbered by co-existing express, implied, prescriptive, and implied by necessity easements. Appellants assert that by combining these easements, they have adequate property and authority to elevate the Easement Road as much as needed—five to seven feet—to ensure it is usable in flood years. It is undisputed that such an elevation would require a subjacent and lateral support slope extending well beyond the 20-foot express easement. Appellants argue that with the

8

combined easements, they enjoy a second 20-foot easement running parallel and contiguous with the original express easement which would allow for reconstruction of the Easement Road at a higher elevation. The District Court disagreed, holding that Appellants have a 20-foot-wide express easement which is the Easement Road, but no other easement rights. The court granted summary judgment to Reicks on this issue.

¶27 It is well-established that "[t]he breadth and scope of an easement are determined by the actual terms of the grant." Section 70-17-106, MCA, provides "The extent of a servitude is determined by the terms of the grant or the nature of the enjoyment by which it was acquired." Numerous historic documents presented to the District Court establish that a 20-foot easement was expressly granted to Appellants. Moreover, the record indicates that Appellants have "enjoyed" a defined and constructed 20-foot road over Lot 24 for more than fifty years and previously have never alleged the existence of multiple easements. The location of the Easement Road, as well as its width, is well-established, historical, and accurately documented on a 1968 Certificate of Survey. *See Anderson v. Stokes*, 2007 MT 166, ¶ 43, 338 Mont. 118, 163 P.3d 1273 (An easement is limited to its historical location and size.). Claims of a subsequently-granted parallel express easement are not supported by the record.

¶28 Additionally, Appellants have not established the existence of a prescriptive easement. They claim a prescriptive easement based upon their use of extra footage along the Easement Road for snow plowing and their repeated utilization of a paved turnaround location near the Reicks' garage when needed. The District Court was

unpersuaded by these claims. It found that Appellants' typical use of the turnaround area would not have taken them outside of their allotted 20-foot express easement.

¶29 The court further held that Appellants did not have an implied easement by necessity. In granting summary judgment to the Reicks on this issue, the court correctly determined that the elements required to establish an easement by necessity were not satisfied. An easement by necessity arises when there is unity of ownership and strict necessity. *Ashby v. Maechling*, 2010 MT 80, ¶ 19, 356 Mont. 68, 229 P.3d 1210. Strict necessity is defined as "a lack of practical access to a public road for ingress or egress." Additionally, strict necessity must exist at the time of severance to create an easement by necessity. *Kelly v. Burlington N. R.R.*, 279 Mont. 238, 243, 927 P.2d 4, 7 (1996). The record shows that at the time of severance Appellants had an existing roadway, an established route for ingress and egress, and a granted easement; consequently, there was no easement by necessity as a matter of law.

¶30 Lastly, Appellants claim they acquired an implied easement by pre-existing use before the subdivision was created and the tracts were severed from common ownership. They assert that when the original two families subdivided the property for residential development in 1974, these owners intended the implied easement by pre-existing use to continue after severance. Appellants' argument is unpersuasive and unsupported. As established above, Appellants have a written, express easement that clearly identifies the easement granted by the original grantor. This written easement gives Appellants access via the Easement Road to their property. Moreover, a claim to an implied easement by pre-existing use does not provide Appellants with additional rights or property beyond

10

those granted by the express easement. The express easement is the controlling easement.

¶31 The scope of the easement to which Appellants are entitled includes maintenance or reconstruction of the Easement Road as much as practicable within the 20-foot easement corridor, providing such construction complies with applicable regulations and does not unduly burden the servient estate. The court's order of summary judgment on this issue was correct as a matter of law.

¶32 *Did the District Court err by rejecting Appellants' claim of authority to sign and submit an application for a lakeshore improvement permit?*

¶33 Appellants argue that the scope of their easement includes the right to improve the road in any manner required to stay above floodwaters and that they should be authorized to sign for lakeshore improvement permits to accomplish such improvements. They claim the District Court erred when it denied their request for summary judgment on this issue. The District Court observed that Appellants presented no specific plan for raising the road; rather, they simply requested declaratory judgment that their easement authorized them to repair and maintain the Easement Road and they should be allowed to obtain permits necessary to do so. The court noted that the right to obtain lakeshore improvement permits normally rests with the landowner. Additionally, Appellants had no right under their easement to "unreasonably interfere with [Reicks'] reasonably convenient enjoyment of the servitude" or do unnecessary injury to the Reicks' property. Consequently, the District Court did "not find it appropriate to entirely remove [Reicks] from decision making regarding changes to the road that affect the [sic] both the

11

lakeshore and [Reicks'] property." The District Court held Appellants were "not entitled to a Court order permitting them to apply for lakeshore improvement permits" without Reicks' approval.

¶34 Appellants present no legal authority supporting their claim of a right to sign for permits authorizing improvements to land they do not own. Appellants have a right to repair and maintain their single express easement providing such repairs and maintenance can take place within the 20-foot easement property, are in compliance with applicable regulations, and do not unreasonably interfere with Reicks' enjoyment of their property. *Earl v. Pavex*, 2013 MT 343, ¶ 44, 372 Mont. 343, 313 P.3d 154. The District Court did not err in denying Appellants' motion for summary judgment as to this issue.

¶35 *Did the District Court err by concluding the Maintenance Agreement is unenforceable against the Reicks for lack of consideration?*

¶36 As noted above, the Reicks and Appellants entered into the 1992 Maintenance Agreement which set forth that a majority of signatories could determine what repairs and maintenance to the Easement Road were needed and when these repairs would take place. The Maintenance Agreement provided that all signatories would share the costs of such repairs or maintenance. Appellants allege that the Reicks breached the Maintenance Agreement by refusing to defer to the majority's desired repairs and refusing to share in the costs of such repairs. The District Court held that the 1992 Maintenance Agreement was unenforceable against the Reicks for want of consideration, stating the Reicks gained nothing by signing the 1992 agreement and Appellants gave up nothing.

12

¶37 The essential elements of a contract are: (1) identifiable parties capable of contracting; (2) the consent of these parties; (3) a lawful object; and (4) consideration. Section 28-2-102, MCA. Consideration consists, in part, of any "benefit conferred or agreed to be conferred upon the promisor by any other person . . . ." Section 28-2-801, MCA. It is undisputed that the Reicks share the use of the Easement Road. Upon entering into the 1992 Agreement, they received the benefit of a cost-sharing arrangement for road maintenance and repair. Such mutual benefit constitutes consideration rendering the Maintenance Agreement enforceable against the Reicks. The District Court erred in holding that the Maintenance Agreement was unenforceable against them; however, as discussed below, the error is harmless and does not warrant remand.

¶38 *Did the District Court err by ruling that the Reicks did not breach the Maintenance Agreement?*

¶39 Appellants claim that the Reicks breached the Maintenance Agreement by refusing (1) to comply with the majority of the homeowners' decision to improve the Easement Road; (2) to allow the spur road gravel to be placed on the Easement Road; and (3) to share in the cost of the spur road fill materials. They posit that the District Court erred by denying their motion for summary judgment on the Reicks' breach, and by entering judgment against them on this issue following trial.

¶40 While the majority of the Appellants signing the Maintenance Agreement did determine repairs to the Easement Road were required, the proposed repairs—a five to seven foot elevation of the Easement Road—could not be achieved within the

13

Appellants' easement. Because the purpose of the Maintenance Agreement was to preserve the usability of the easement, it must be interpreted within the confines and restrictions of the easement. There is no evidence that the Maintenance Agreement was prepared and executed with the intent to expand the size of the easement or grant greater rights to Appellants under the easement. Had Appellants proposed repairs to the Easement Road that could have been attained within the easement boundaries, the Reicks would have been obligated under the Maintenance Agreement to agree to the repairs and share in the costs. As Appellants have not yet proposed such repairs or maintenance, the Reicks have not breached the Maintenance Agreement.

¶41     As the Reicks have not breached the Maintenance Agreement, the District Court's erroneous holding that the agreement was unenforceable for lack of consideration is harmless.

¶42     *Did the District Court err by concluding that Appellants breached the Detour Agreement, and awarding damages to the Reicks?*

¶43     Appellants argue that the Reicks prevented them from performing their obligations under the Detour Agreement by refusing to allow them to remove the spur road gravel and apply it to the Easement Road. Additionally, they claim the Detour Agreement did not require that they restore Reicks' property "as soon as the water receded"; rather, that was a County requirement. They assert that the majority of the gravel used for the spur road was located on their easement and should not have been removed. Lastly, they assert the Reicks are not entitled to equitable relief as the Reicks have "unclean hands."

¶44    The District Court determined that the Reicks did nothing to prevent Appellants from performing under the terms of the Detour Agreement, and that Appellants breached the contract by refusing to remove the fill material and restore the Reicks' property in a timely manner.  The court entered judgment for the Reicks on their counterclaim in the sum of $5,300, representing the costs incurred by the Reicks to remove the fill material and return their property to its original condition, together with prejudgment interest.

¶45    The record does not support Appellants' allegations.  It is undisputed that the floodwaters receded in the summer of 2012 and the Reicks and the County demanded removal of the spur road.  Appellants refused.  One year later, Reicks demanded removal and restoration again and the Appellants refused again.  The terms of the Detour Agreement were simple and unequivocal.  Reicks would allow the spur road to be constructed and used by Appellants and Appellants would remove it and restore Reicks' property when the water receded.  The Detour Agreement was a binding agreement and the Reicks performed as required.  The Reicks did nothing to prevent Appellants from performing under the agreement.  The District Court did not err in granting summary judgment to the Reicks on this issue.

¶46    *Did the District Court err by concluding the Reicks did not convert the Appellants' fill material?*

¶47    Appellants claimed the Reicks committed conversion of property by removing and disposing of the gravel fill material Appellants had purchased and used to construct the spur road and repair portions of the Easement Road.  Appellants argued they intended to remove the material from the spur road and reuse it for further repairs to the Easement

15

Road. They claimed damages in the amount of $5,564, *i.e.*, the price of the gravel. Reicks countered that Appellants contracted to remove the fill and breached the contract by refusing to do so; consequently, Appellants waived their right to possession of it. Furthermore, Reicks assert they were forced to provide free storage for 640 tons of fill material after the floodwaters receded and the fill was no longer needed. The District Court denied Appellants' claim for conversion.

¶48 Conversion requires ownership of property; a right of possession; unauthorized dominion over that property by another; and resulting damages. *Eatinger v. Johnson*, 269 Mont. 99, 104, 887 P.2d 231, 234 (1994). In the case before us, Appellants suffered no damages. Under the Detour Agreement, Appellants were under a contractual obligation to pay the costs of removing the fill material and restoring Reicks' property to its pre-flood condition. Additionally, testimony by County officials established that the fill material used to construct the spur road and temporarily repair the Easement Road during the flood period did not meet County standards and would not be sanctioned for Easement Road repairs. As a result, Appellants would have had to remove and dispose of the fill material in any event. As Appellants refused to do so, the Reicks undertook the removal and restoration of the property. Consequently, Appellants suffered no damage from Reicks' removal of the unwanted and unusable fill material and the District Court did not err in denying Appellants' claim for conversion.

¶49 *Did the District Court err by ordering Appellants to pay Reicks' counterclaim-related attorney's fees and costs?*

¶50 As noted above, the Reicks counterclaimed against Appellants for breach of the Detour Agreement, *quantum meruit*, and breach of the implied covenant of good faith. Following the District Court's ruling that the Reicks prevailed on their counterclaim, and relying upon § 25-7-105(1) and (3), MCA, the court awarded Reicks the attorney's fees and costs pertaining to the counterclaim. Appellants claim this was error and that Appellants are entitled to their fees and costs.

¶51 Section 25-7-105, MCA, provides, in relevant part:

(1) At any time more than 60 days after service of the complaint and more than 30 days before the trial begins, any party may serve upon the adverse party a written offer to settle a claim for the money or property or to the effect specified in the offer. If within 10 days after the service of the offer, the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service of the offer and notice of acceptance with the clerk of court and the court shall enter judgment. An offer not accepted is considered withdrawn and evidence of the offer is not admissible except in a proceeding to determine costs. If the final judgment is less favorable to the offeree than the offer, the offeree shall pay the costs incurred by the offeror after the offer was made. The fact that an offer is made but not accepted does not preclude a subsequent offer.

. . .

(3) For the purposes of this section, costs include reasonable attorney fees.

¶52 The Reicks presented their offer of settlement of the counterclaim on December 31, 2013, seeking $5,250 from Appellants. The Reicks also notified Appellants of their potential liability for attorney's fees and costs under § 25-7-105, MCA. Appellants submitted their counter-offer of settlement of the counterclaim on April 15, 2014, seeking $5,564. As the Reicks prevailed on their counterclaim and the final judgment of

17

$5,300 was less favorable to the Appellants than their settlement offer, the District Court awarded the Reicks attorney's fees and costs. The District Court's interpretation and application of the statute was not error.

## CONCLUSION

¶53 For the foregoing reasons, we affirm the District Court's rulings with the exception of its conclusion that the Maintenance Agreement was unenforceable against the Reicks for want of consideration. While this was error, it was harmless error as the Reicks did not breach the Maintenance Agreement.

/S/ PATRICIA COTTER

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA